MARGARET SHEEHAN, BY HER FATHER AND
NATURAL GUARDIAN, CHARLES SHEEHAN, AND
ANOTHER v. ST. PETER'S CATHOLIC SCHOOL.

188 N. W. (2d) 868.

July 16, 1971—No. 42481.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Robert M. Frisbee,* for appellant.

*Dudley, Smith, Copeland & Belisle* and *G. William Smith,* for respondents.

Heard before Knutson, C. J., and Murphy, Otis, Kelly, and Odden, JJ.

OTIS, JUSTICE.

The minor plaintiff, a student in defendant's school, has recovered an award of $50,000 against defendant for injury to her eye, occasioned by another student's throwing pebbles at her while she was a spectator on an athletic field. The issues are whether the injury was one which could reasonably be foreseen as a result of failure to supervise the students involved in the accident; if so, whether such lack of supervision was a proximate cause of the injury; and whether the court should have submitted to the jury the question of plaintiff's own negligence. The jury resolved the first two questions in favor of plaintiff, and we affirm.

The accident occurred on the morning of May 6, 1966, when one of defendant's teachers escorted 20 eighth-grade girls to an athletic field during the morning recess. The children were directed to sit on a pole or log on the third-base line of a baseball field being used by eighth-grade boys. The teacher thereupon returned to the school building and did not reappear until after the accident. About 5 minutes after she left, some of the boys waiting to bat began pelting the girls with pebbles. Although the girls protested, the pebble throwing continued for 3 or 4 minutes until plaintiff was struck in the right eye, causing her to lose the sight of that eye.

The case was tried on the theory that defendant was negligent in failing adequately to supervise the children's activities. The court instructed the jury:

"* * * It is the duty of a school to use ordinary care and to protect its students from injury resulting from the conduct of other students under circumstances where such conduct would reasonably have been foreseen and could have been prevented by the use of ordinary care. There is no requirement of constant supervision of all the movements of pupils at all times."

In addition, the court defined proximate cause. Defendant now argues that the essential elements of the cause of action are "notice that a dangerous activity either has in the past or is about to occur and proof that additional supervision would have prevented the occurrence." We are of the opinion that the weight of authority does not sustain such a notice requirement.

1. The principal cases on which defendant relies are Wilber v. City of Binghamton, 271 App. Div. 402, 66 N. Y. S. (2d) 250, affirmed, 296 N. Y. 950, 73 N. E. (2d) 263; Ohman v. Board of Education, 300 N. Y. 306, 90 N. E. (2d) 474; Nestor v. City of New York, 28 Misc. (2d) 70, 211 N. Y. S. (2d) 975; Woodsmall v. Mount Diablo Unified School Dist. 188 Cal. App. (2d) 262, 10 Cal. Rptr. 447. Those decisions turned on the fact that the injuries were inflicted suddenly and without warning and in such a manner the courts felt supervision would not have prevented them. The Nestor case characterized the action of the student who inflicted the injury as "sudden, impulsive, and spontaneous" (28 Misc. [2d] 73, 211 N. Y. S. [2d] 978) so that even more vigilant supervision would not have averted the accident. The injury in Woodsmall was the result of "one of those events which could occur equally as well in the presence of the teacher as during her absence." 188 Cal. App. (2d) 265, 10 Cal. Rptr. 450. The Ohman decision also hinged on the fact that, in the opinion of the majority, injury to plaintiff's eye by a lead pencil thrown by another classmate could not have been averted by the teacher's presence. 300 N. Y. 310, 90 N. E. (2d) 475.

The dissent in Ohman has been much quoted for reaching an opposite result. Judge Conway there stated (300 N. Y. 314, 90 N. E. [2d] 478):

"* * * Children have a known proclivity to act impulsively without thought of the possibilities of danger. It is precisely this lack of mature judgment which makes supervision so vital. The mere presence of the hand of authority and discipline normally is effective to curb this youthful exuberance and to protect the children against their own folly."

The New Jersey Supreme Court adopted this view in Titus v. Lindberg, 49 N. J. 66, 75, 228 A. (2d) 65, 70. That case also involved inadequate supervision on school property, and the court permitted recovery against both the school and the child who inflicted the injury.[1] In Cirillo v. City of Milwaukee, 34 Wis. (2d) 705, 150 N. W. (2d) 460, the Wisconsin Supreme Court reversed a summary judgment for defendant where plaintiff had been injured during an unsupervised gym period. Mr. Justice Wilkie quoted Judge Conway as follows (34 Wis. [2d] 714, 150 N. W. [2d] 464):

"An ordinary layman, without any special knowledge or training, must, in some instances, anticipate subsequent conduct of children by which they may harm themselves. Whether such subsequent conduct could have been foreseen by the exercise of reasonable care and prudence under the circumstances has been held a question of fact for the jury. * * * How much more should school teachers and principals be required to exercise reasonable care and prudence, under the circumstances, to anticipate and guard against dangerous conduct on the part of their youthful pupils affecting one another."

Three other decisions merit comment. We subscribe to the view adopted by the California court in Ziegler v. Santa Cruz City High School Dist. 168 Cal. App. (2d) 277, 335 P. (2d) 709, which held that in order to recover damages a student need only prove that a general danger was foreseeable and that supervision

---

[1] In the instant case it was not possible to establish which of several boys throwing pebbles actually caused the damage.

would have prevented the accident. It was not necessary to prove that the particular accident which occurred was foreseeable.

Christofides v. Hellenic Eastern Ortho. Christian Church, 33 Misc. (2d) 741, 227 N. Y. S. (2d) 946, reviews and distinguishes many of the supervision decisions. In that case, a child was stabbed by another student during a 25-minute interval in an unsupervised classroom. The evidence showed that the knife wielder had been brandishing it for 5 or 10 minutes before the injury was inflicted. The court pointed out that, had a teacher been present, he would have seen the imminent threat of danger and injury and would have been in a position to prevent it. Thus, the court found a breach of duty which proximately caused the injuries complained of.

The Louisiana Court of Appeals in Nash v. Rapides Parish School Bd. 188 So. (2d) 508, stressed the fact that the teacher could not anticipate one child's being struck in the eye by another child and that even if it could be anticipated there was no showing of any likelihood the injury could have been prevented had the teacher been present.

"* * * As is often the case, accidents such as this, involving school children at play, happen so quickly that unless there was direct supervision of every child (which we recognize as being impossible), the accident can be said to be almost impossible to prevent." 188 So. (2d) 510.

We are of the opinion that the better reasoned cases permit recovery if there is evidence from which a jury could find that supervision would probably have prevented the accident. We need not decide whether there may be recovery for lack of supervision where a child is injured by sudden, unanticipated action of a fellow student. This is not such a case. Here, the pebble throwing continued for 3 or 4 minutes before plaintiff was injured. Under such circumstances, a jury could properly find that had the teacher been present she would have put a stop to this dangerous activity before plaintiff was struck.

2. Defendant asserts that the court abused its discretion in denying a motion to amend the answer so that the issue of contributory negligence could be raised. We do not agree. This accident occurred in May 1966. Defendant served its answer in September 1967. A pretrial conference was held in September 1968. At no point was the question of contributory negligence raised until the matter was brought on for trial in November 1969. In view of the lapse of over 2 years from the time the answer was served, clearly it was within the discretion of the trial court to refuse permission to introduce an entirely new issue at the moment of trial. No reason was advanced for defendant's delay. Plaintiff had a right to proceed when the case was called. Some prejudice may always be assumed where plaintiff's preparation for trial is not designed to meet the issue of contributory negligence.

Affirmed.