Cynthia RALEIGH, a Minor, by Her Mother and Natural Guardian, Lauretta Raleigh, et al., Respondents,

v.

INDEPENDENT SCHOOL DISTRICT NO. 625, Appellant,

Orpheum-St. Paul Cinema Corporation, Respondent.

No. 48138.

Supreme Court of Minnesota.

Dec. 15, 1978.

Jardine, Logan & O'Brien and John Kennedy, Jr., St. Paul, for appellant.

Donnelly & Martin, Joyce & McHaffie, St. Paul, for respondents.

Heard before KELLY, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

In February 1972, Cynthia Raleigh, a white student at Central High School in St. Paul, was compelled to attend, as part of her education, a school-sponsored showing of the documentary film "KING, A Filmed Record, Montgomery to Memphis." Racial tension existed at Central High School and other schools in St. Paul at that time. While leaving the theatre, Cynthia's wrist was slashed by a black female and her purse stolen. Cynthia and her mother brought an action against the school district and the theatre. The jury found the school district negligent and assessed damages. We affirm.

In January 1972, the coordinator of Community Arts Productions (CAP), a nonprofit organization, contacted the St. Paul school system regarding the showing of the "KING" film during Afro-American History Week which ran from February 21 to February 27, 1972. This activity was but one of numerous community projects being organized by CAP for the Afro-American History Week. As a result of the contact, the St. Paul school system agreed to show the movie to senior high school students from various schools. The movie was scheduled to be shown at the Orpheum Theatre in downtown St. Paul. Students were to be bussed to and from their classrooms at school. Attendance at Central High School and certain other schools was mandatory for seniors because of the high percentage of minority students at the schools. No parental consent was obtained at Central High. It was contemplated that the students would write an essay on their reactions to the film.

At the time of the presentation by CAP, the school district was furnished literature regarding the film which contained quotes from various newspapers regarding the documentary. The film itself was comprised of existing television and other news films and pictures and contained no editorial comment. A great portion of the segments of the film had previously been seen on television at isolated times. The reviews were complimentary and did indicate that portions of the film depicted scenes of racial violence. The evidence further disclosed that there was racial tension at Central High at this time.

On the morning of the showing, Cynthia left from school with her classmates and boarded a bus provided by the school for transportation to the theatre. The school district had directed that there be a ratio of one teacher for each 35 students attending

the movie. At the theatre about 1,200 students entered. There were no specific seating assignments or directions given to the students. Cynthia seated herself in the balcony. During the showing of the movie, obscene racial comments were made by both white and black students seated near Cynthia. She made no statements, but testified that she was very uneasy and uncomfortable sitting there. She further testified that there was a significant tension in the theatre at the end of the movie.

At the end of the movie, the students, without any direction by the teachers, began to exit the theatre. Cynthia proceeded in a crowd down the steps from the balcony and entered the lobby area, proceeding toward the doorway. She felt herself being pushed from one side. She then saw blood on her hand. She observed the hand of a black person grab her purse and yelled "My purse." As she turned, she observed two black females running in the opposite direction of the rest of the crowd toward the bathrooms in the back.

A fellow student came to her aid and told her to stand there while she went looking for a teacher. William Kirkwood, a teacher at Central, came to assist her. He testified that he took her to the manager's office where the police were called, and she was taken to the hospital for treatment. Cynthia was asked, "And did a teacher come," and her response was, "Finally, after a while."

Lynn Krueger, the student who came to the aid of Cynthia, testified as to her efforts. She stated that she asked other students if there was a teacher around because this girl was badly hurt. A student she knew responded to her request and after a few minutes located Mr. Kirkwood. She further testified that during the time she was attempting to locate a teacher, the manager of the theatre appeared and took Cynthia to the office where they met Mr. Kirkwood. Mr. Kirkwood testified that he had been in the balcony during the showing of the film. He was in the lobby watching the students file out. He testified that there were other teachers in the lobby. He

did not observe the injury to Cynthia because there were too many people separating her and himself. He further testified that the students had quieted down as they were leaving the theatre, there was no rowdiness, and nothing had occurred which would have led him to believe that Cynthia's wrist was going to be slashed or her purse stolen.

The trial court, over objection of defense counsel, permitted evidence to be introduced by the plaintiffs of another assault upon a white female student by black females which occurred in the ladies room off the lobby. This assault occurred at approximately the same time as the assault on Cynthia. There was no evidence to connect the assailant of Cynthia with the assailants in the other assault.

At the close of the case, the trial court dismissed the defendant Orpheum Theatre but refused to dismiss the school district. The case was submitted to the jury based upon negligent supervision by the school district at the time of the assault and the creation of a situation in which it was reasonably foreseeable that it may give rise to an occasion for injury to others. The jury was instructed as to causation and as to superseding cause. The jury returned a verdict for the plaintiffs.

On appeal the instructions of the trial court as to the negligence of the school district and its admission of the evidence of another assault are challenged.

1. The parties and the trial court primarily rely on our decision in *Sheehan v. St. Peter's Catholic School*, 291 Minn. 1, 188 N.W.2d 868 (1971). In that case, the plaintiff, while attending school, was injured by another student who threw pebbles at her when she was a spectator on an athletic field. The pebble throwing had continued for 3 or 4 minutes before plaintiff was struck in the eye with one of the pebbles. This court affirmed a judgment for plaintiff based on the defendant school's negligent supervision. This court implicitly approved the trial court's use of the following instruction (291 Minn. 3, 188 N.W.2d 870):

" * * * It is the duty of a school to use ordinary care and to protect its students from injury resulting from the conduct of other students under circumstances where such conduct would reasonably have been foreseen and could have been prevented by the use of ordinary care. There is no requirement of constant supervision of all the movements of pupils at all times."

This court also rejected the argument that notice of the danger was required (291 Minn. 3, 188 N.W.2d 870):

" * * * Defendant now argues that the essential elements of the cause of action are 'notice that a dangerous activity either has in the past or is about to occur and proof that additional supervision would have prevented the occurrence.' We are of the opinion that the weight of authority does not sustain such a notice requirement."

This court did recognize, however, that certain instances of student misconduct might be so sudden and unanticipated that such misconduct could occur under vigilant supervision as well as negligent supervision. After discussing several cases where such sudden misconduct had occurred, this court concluded (291 Minn. 5, 188 N.W.2d 871):

"We are of the opinion that the better reasoned cases permit recovery if there is evidence from which a jury could find that supervision would probably have prevented the accident. We need not decide whether there may be recovery for lack of supervision where a child is injured by sudden, unanticipated action of a fellow student. This is not such a case. Here, the pebble throwing continued for 3 or 4 minutes before plaintiff was injured. Under such circumstances, a jury could properly find that had the teacher been present she would have put a stop to this dangerous activity before plaintiff was struck."

See, also, *Kingsley v. Independent School Dist. No. 2*, 312 Minn. ——, 251 N.W.2d 634 (1977).

Cases from other jurisdictions indicate that a school district may be held liable on the basis of negligent supervision for an injury inflicted by a fellow student if the risk of harm is foreseeable and avoidable. See, generally, Annotation, 38 A.L.R.3d 830; Annotation, 38 A.L.R.3d 908. A New York case has a fact situation similar to that in the present appeal. In *Lauricella v. Board of Education*, 52 A.D.2d 710, 381 N.Y.S.2d 566 (1976), the plaintiff student brought an action against the school district for negligent supervision after plaintiff was attacked by several black students and forced to jump from a second floor lavatory. The court affirmed a judgment for plaintiff pursuant to a jury verdict, noting that other racial problems had occurred recently at the school. Thus, the court concluded the issue of negligent supervision had been properly submitted to the jury.

Similarly, in *Beck v. San Francisco Unified School District*, 225 Cal.App.2d 503, 37 Cal.Rptr. 471 (1964), a sophomore in high school was, without provocation or warning, hit by two older boys while attending a school carnival. In the words of the court (225 Cal.App.2d 508, 37 Cal.Rptr. 473):

" * * * There had never been any fights or difficulties at previous festivals. On this occasion, there was nothing unusual, no loud talking or shoving or other circumstances to indicate that any trouble was brewing. The evidence establishes without contradiction that the plaintiff was injured by the sudden wilful act of two 17 year old fellow students. The two assailants did not have a reputation for belligerency or fighting. The plaintiff testified that they did not address him in a pugnacious manner and that he received a 'sneak punch.' "

Nevertheless, the court affirmed a judgment for plaintiff because "there is a tendency for a gathering of adolescents to engage in rowdyism unless under proper supervision." 225 Cal.App.2d 508, 37 Cal. Rptr. 474. A prima facie case had been made by showing no teachers were in the area, and the question of intervening cause was for the jury.

The school district relies on *Sly v. Board of Education*, 213 Kan. 415, 516 P.2d 895

(1973), but we find it distinguishable since the Kansas court required notice of prior misconduct or the likelihood thereof as a basis for liability. We rejected this requirement in *Sheehan v. St. Peter's Catholic School, supra.*

■ We conclude there was no error on the issue of negligent supervision or causation. By affirming the judgment for plaintiffs Cynthia Raleigh and her mother, we are not expanding the rule set forth in *Sheehan. Sheehan* requires that the school district exercise ordinary care to prevent foreseeable misconduct of other students. Thus, although the school district might not be liable for sudden, unanticipated misconduct of fellow students, it is liable for sudden, foreseeable misconduct which probably could have been prevented by the exercise of ordinary care. The reason is that foreseeability creates a duty of ordinary care and proximate causation is established by showing the likelihood that the misconduct would have been prevented had the duty been discharged.

■ The school district argues the slashing of Cynthia's wrist was sudden and unanticipated. We do not sit as factfinders. The trial court properly instructed the jury on the issue of the school district's duty of ordinary care to protect students from foreseeable misconduct of fellow students. It also properly instructed the jury on the question of causation, particularly whether the assailant's conduct was a superseding cause.

■ The facts of this case make it extremely close. If the only evidence of negligence had been the fact that the school district received written literature describing the film at the time its showing was proposed by CAP, we would have difficulty affirming. But, in view of the evidence indicating that the school district was aware of the racial tension and that there was a lack of supervision and organization of the students at the theatre, we cannot hold as a matter of law that the jury was unjustified in finding breach of duty. Nor can we hold as a matter of law that the

jury was unjustified in finding causation. Reasonable supervision might prevent sudden injuries, of course, not only by interrupting it, but also by deterring it altogether. See, *Dailey v. Los Angeles Unified School District*, 2 Cal.3d 741, 750, 87 Cal. Rptr. 376, 381, 470 P.2d 360, 365, note 7 (1970).

We have also examined the other instructions of the court concerning negligence. We find they properly established the law of the case.

■ 2. The school district, without citing any cases, argues that because the evidence was immaterial and irrelevant, it was error for the trial court to permit testimony concerning the attack on the student in the ladies rest room which occurred at approximately the same time as the attack on plaintiff.

The trial court has wide latitude in determining relevant evidence, and its decision controls unless this discretion was abused. See, *Renne v. Gustafson*, 292 Minn. 218, 194 N.W.2d 267 (1972); *Hiedeman v. Hiedeman*, 290 Minn. 210, 187 N.W.2d 119 (1971). This court has consistently held that in a negligence action it is relevant to show the existence or the absence of similar occurrences at approximately the same time and place involving the same risk. See, *Smith v. Kahler Corp.*, 297 Minn. 272, 211 N.W.2d 146 (1973); *Haukom v. Chicago Great Western Ry. Co.*, 269 Minn. 542, 132 N.W.2d 271 (1964); *Lyon v. Dr. Scholl's Foot Comfort Shops, Inc.*, 251 Minn. 285, 87 N.W.2d 651 (1958). The rationale is that the evidence shows the existence of the dangerous condition and foreseeability of harm. Thus, the trial court correctly allowed the evidence of the other attack on the student in the ladies rest room.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.