**Marvin E. FALLIN, Appellant,**

v.

**MAPLEWOOD–NORTH ST. PAUL DISTRICT NO. 622, et al., Respondents.**

**No. C4–83–1344.**

Supreme Court of Minnesota.

Feb. 15, 1985.

Joseph H. Rivard, Rivard, Convery & Assoc., P.A., St. Paul, for appellant.

Mark A. Fonken, Jardine, Logan & O'Brien, St. Paul, for respondents.

## OPINION

SCOTT, Justice.

We granted this petition to review a decision of the Minnesota Court of Appeals reversing and remanding a jury verdict on the basis of improper jury instructions. Appellant Marvin Fallin alleged negligence of respondents school district and teacher Jeffrey Nelson leading to his personal injury in an advanced woodworking class. The case was submitted to the jury only against defendant Nelson, since the school district's liability was based solely on the theory of respondeat superior. The jury assessed appellant's damages at $80,000 and returned a special verdict finding both plaintiff Fallin and defendant Nelson negligent, but found that only plaintiff's negligence caused the injury. Appellant sought review from the court of appeals of both the amount of damages and the finding that respondent teacher's negligence did not cause the accident.

The court of appeals affirmed the determination of damages. It reversed and remanded to the district court, however, on

the basis of the trial court's jury instructions. The court of appeals found that the general definition of negligence administered did not adequately inform the jury as to the proper standard of care required of a school district and, further, that the jury could not have known what the various theories of negligence were in the instant case. We reverse the court of appeals.

On March 15, 1978, the date of the injury giving rise to this action, appellant Fallin was in an advanced woodworking class (Cabinetmaking) taught by respondent Nelson at Tartan Senior High School in Oakdale. Prior to this class, appellant had taken a prerequisite woodworking class and several other shop classes and had previously worked with power tools. Although he knew they were dangerous, he felt comfortable using the saws. One of Nelson's safety rules required the operator of a saw to use a push stick if the operator's hands could come within four inches of a cutting blade. A push stick is a notched handle used to push wood through a saw in order to keep the operator's hands away from the saw's blade. Appellant testified that when working with a saw he usually used a push stick.

On March 15, 1978, as a class project, appellant was making a chessboard. As a first step, he planned to make a groove two inches wide and one-quarter inch deep in a six-by-eight-inch piece of particleboard. The board would then serve as a "jig" or pattern for the squares that would make up the chessboard. For speed and accuracy, Nelson recommended that appellant use a table saw with a dado blade.

A guard for the saw, a Brett Guard 10–A, with an "anti-kickback" device was available in the classroom at the time of the accident. For accuracy reasons, Nelson instructed appellant not to use the Brett Guard. The experts differed on whether the guard should have been used. Nelson did not recall if he specifically directed appellant to use a push stick on this occasion, but was certain he would not have told appellant not to use one. Appellant testified that Nelson told him not to use the stick, but admitted he was aware of Nelson's rule to use a push stick if his hands would come within four inches of the blade. Appellant admitted he did look for a push stick out of habit before making his first cut, but could not find one. He testified, nevertheless, that had he found a stick he would not have used it. At the time of the accident, contrary to school policy, Nelson left the classroom for approximately one to one and one-half minutes.

As appellant was using the saw, the wood "kicked back" and his thumb was caught in the blade. Appellant was taken to a hospital where restorative surgery to the thumb was attempted and failed. A partial amputation was required.

The court of appeals was asked to consider two issues in this case: (1) whether the jury's finding that Nelson's negligence was not causally related to appellant's injuries was manifestly contrary to the evidence; and (2) whether the damages awarded by the jury were sufficient. The damage issue, affirmed by the court of appeals, is not before this court. The court of appeals fashioned a separate issue as to whether the trial court's jury instructions on negligence were adequate.

■ Neither party objected to the jury instructions, and no post-trial motions were made. As the court of appeals recognized, "[o]rdinarily, if the appeal is from the judgment only, and there was no motion for new trial made, the trial court's instructions are not reviewable." *Fallin v. Maplewood-North St. Paul District No. 622*, 348 N.W.2d 811, 814 (Minn.App.1984) (footnote omitted), *citing Priewe v. Bartz*, 249 Minn. 488, 83 N.W.2d 116 (1957). Nevertheless, the appellate court felt that this case fell under an exception to that rule: that an appellate court can review the instructions absent proper objection when there is "an error with respect to fundamental law and controlling principle." *Fallin*, 348 N.W.2d at 814, *citing Anderson v. Mid-Motors, Inc.*, 256 Minn. 157, 98 N.W.2d 188 (1959).

The instruction given to the jury was one of general negligence, and followed civil JIG II 101, 140 and 141 almost verbatim. The court of appeals found the jury instruction erroneous with respect to fundamental law and controlling principle because it was a general instruction on negligence "rather than a specific instruction on the school district's duty of care." *Fallin,* 348 N.W.2d at 814.

The following issues are presented:

(1) Was the court of appeals correct in finding that the jury instructions were in error?

(2) Was the evidence sufficient to support the jury's special verdict?

1. In defining a school district's standard of care, the appellate court stated: "School districts have a duty to protect their students. A school district must be *especially cautious* when placing highly dangerous equipment, such as table saws, at the use of the students." *Fallin,* 348 N.W.2d at 813–14 (emphasis added). The "especially cautious" language charters a higher standard of care for school districts. The court went on to say, "The school district owes a duty to 'use *reasonable care* to inspect and maintain its premises and equipment and to protect its students from an *unreasonable* risk of harm from the conditions of the premises and equipment.'" *Fallin,* 348 N.W.2d at 814 (citations omitted; emphasis added). This appears incongruous, since the latter statement amounts to a general negligence standard. The court of appeals then concludes that the jury could not have known from the administered jury instructions what standard of care is required of a school district.

Assuming the court of appeals was attempting by its first proposition to create a new standard of care, the first issue to be addressed is whether a school district owes a higher duty of care to a student in an advanced woodworking class using a power saw. The court of appeals cites no cases for its proposition that school districts must be "especially cautious" when using

dangerous equipment. Veritably no cases exist establishing this standard.

The issue then arises under the court of appeals' decision as to what duty is owed by a school district to a student in an advanced woodworking class. Other jurisdictions have reached this issue. *See Matteucci v. High School District No. 208, County of Cook,* 4 Ill.App.3d 710, 281 N.E.2d 383 (1972) (instructor had duty to use due care in instructing and supervising students using machine shop equipment); *Kiser v. Snyder,* 21 N.C.App. 708, 205 S.E.2d 619 (1974) (teacher subject to standard of care ordinarily prudent man charged with those duties would exercise in same circumstances).

The court of appeals cites Minnesota cases in support of its proposition that a school district owes a duty of reasonable care to its students. *Kingsley v. Independent School District No. 2, Hill City,* 312 Minn. 572, 574, 251 N.W.2d 634, 635 (1977). That case involved an injury to a girl caused by the defective condition of a school locker. The court stated that the school owed a duty to use reasonable care to inspect and maintain its premises and equipment and to protect its students from unreasonable risk of harm. *Id. See also Tiemann v. Independent School District No. 740,* 331 N.W.2d 250, 251 (Minn.1983) (girl injured in physical education class by attempting to vault over pommel horse with exposed holes in it); *Raleigh v. Independent School District No. 625,* 275 N.W.2d 572, 575 (Minn.1978) (white student injured by black student after showing school-sponsored documentary racial film which students were compelled to attend during Afro-American History Week). These Minnesota cases do not establish any duty of a school district other than that of using reasonable care.

 Nothing in the court of appeals' decision nor in existing case law provides a convincing argument that the standard of care of a school district is anything but that of a duty to use reasonable care. The appellant argues that the court of appeals was not attempting to effect a higher level

of care, but was in fact concerned that the proper standard of care had not been communicated to the jury. This argument is without merit, for if the standard of care of school districts is that of reasonable care and the jury was instructed as to reasonable care, the jury instructions were proper. The fact that the trial court did not specifically discuss "school districts" and "premises and equipment" does not create error with respect to fundamental law.

■ The court of appeals also states that the jury "could not have known [from the instruction] what the theories of negligence were under the circumstances." *Fallin*, 348 N.W.2d at 814. The appellant recites language from *Sandhofer v. Abbott-Northwestern Hospital*, 283 N.W.2d 362, 367 (Minn.1979), which holds that "a party is entitled to a specific instruction on his theory of the case if there is evidence to support the instruction and it is in accordance with applicable law." What the appellant neglects to consider is that other language in that case states that this court prefers a general instruction where practical, in order to avoid overemphasis in favor of a party, or jury confusion. *Id.* The court in *Sandhofer* upheld a general negligence instruction. *Id.* The appellant argues that he was not allowed a sufficient instruction as to his theory of the case, despite the fact that he made no objection to the instructions at trial. It is clear that appellant's theory of the case was negligence and he received a general instruction on negligence.

■ Appellant's counsel in his closing argument related to the jury his four theories of negligence, and now claims error in the court's refraining from instructing the jury with respect to these four theories. It must be reiterated that appellant's counsel failed to object to the jury instructions, and no addition to the instructions was requested. Had counsel requested an instruction including a "duty to inspect and maintain premises and equipment," the trial court might well have given that instruction. This court said in *Clifford v. Peterson*, 276 Minn. 142, 149 N.W.2d 75 (1967):

While the question is a close one, we have concluded that the omission does not here compel a new trial. In reaching this conclusion we think it is appropriate to observe that counsel has a duty both to the court and to his client to be vigilant in seeing that his case is submitted in a manner which is consistent with his theory of liability. * * * Only where the omissions "destroy the substantial correctness of the charge as a whole," cause a miscarriage of justice, or result in substantial prejudice on an issue "vital in the litigation" will errors in the instructions be treated as fundamental and require a new trial without timely objection or exception.

*Id.* at 145, 149 N.W.2d at 77 (footnotes omitted). In this case submission of the reasonable care standard and not elaborating on the plaintiff's four theories of negligence neither destroyed the substantial correctness of the charge nor resulted in substantial prejudice. Since we find no error with respect to fundamental law and controlling principle, the court of appeals was incorrect in reversing the trial court where there was no objection to the instruction and no post-trial motions were presented. In fact, this point was not before the court at all.

■ 2. The second issue is whether the evidence in the instant case was sufficient to support the jury's special verdict. In *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 273 (Minn.1984), a jury found by special verdict that defendant was negligent but that defendant's negligence did not cause the injury. The plaintiff contended that this jury finding was perverse and inconsistent. This court disagreed. *Id.*, at 274. It is well settled that this court will set aside a special verdict question only when it is perverse and palpably contrary to the evidence. *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981). A jury verdict will be overturned only if no reasonable mind could find as did the jury. *Standafer v. First Nat'l. Bank of Minneapolis*, 243 Minn. 442, 448, 68 N.W.2d 362, 366 (1955). The

evidence must be viewed in the light most favorable to the verdict. *Flom v. Flom,* 291 N.W.2d 914, 916 (Minn.1980). In the instant case, when the evidence as a whole is reviewed in the light most favorable to the verdict, the jury's finding of no causation is not perverse and palpably contrary to the evidence. We do not know precisely the basis for the jury's findings, but one could surmise the jury concluded that Nelson's negligence consisted of his leaving the room as Fallin was using the saw. Appellant's own expert testified that a teacher cannot supervise every student at all times. The jury could have decided, because the accident happened quickly and because of the number of students in the room, that defendant's negligence did not cause the injury. The basis of this decision was a question of fact to be resolved by the jury, and it did so.

We therefore reverse the court of appeals and order the reinstatement of the jury verdict.

Reversed and remanded.