493 So.2d 474 (1986)
BROWARD COUNTY SCHOOL BOARD, Appellant,
v.
Jose RUIZ, Appellee.
No. 85-607.
District Court of Appeal of Florida, Fourth District.
July 2, 1986.
Rehearing Denied September 30, 1986.
*475 Deborah C. Poore of Walton Lantaff Schroeder & Carson, Fort Lauderdale, for appellant.
*476 Michael G. Kaplan of Spellacy and McFann, P.A., Fort Lauderdale, for appellee.
ANSTEAD, Judge.
This is an appeal from a final judgment entered upon a jury verdict holding school officials liable for injuries inflicted upon appellee Jose Ruiz by fellow students. The case was tried in January, 1985 and the jury returned a verdict of $30,000.00 in favor of Ruiz. The trial court denied motions to set aside the verdict. We affirm the actions of the trial court.
Ruiz sued the School Board as a result of injuries he suffered in an assault at Hallandale High School on November 13, 1980. Ruiz, then a sophomore and a member of the school's junior varsity football team, had stayed briefly after school to have his picture taken with the rest of the team. The coach of the team had arranged for some of his players to practice with the varsity team that day, as the JV season had ended. However, Ruiz did not join this practice and instead, after the picture session, went to the cafeteria area to call his father for a ride home. Ruiz testified that his normal routine after practice had been to go to the cafeteria area to call his father and wait for a ride. The coach remained with the rest of the JV team at the varsity practice.
The cafeteria was located in the center of the main campus building. The precise location of the incident was across from the cafeteria door, in an area containing benches and pay phones. While waiting there for his father, Ruiz was attacked and beaten by three other students: Anthony Wilson, Jimmy Wright, and Ray Sands. According to Ruiz's testimony, he was sitting on a bench and looking at a book when he heard someone say "Hey." After that he lost consciousness and woke up in a hospital room. The only other witness to testify was a female student, Lateasea Fredericks. Fredericks and two other friends were in the area waiting for a bus. Fredericks knew the boys who beat Ruiz, but she had not seen Ruiz before. Fredericks stated that Wilson first said something to Ruiz, after which the two got into an "argument." Ruiz then turned around and started walking backwards away from Wilson in the direction of the office, when he was attacked from behind by Wright and severely beaten by all three students. Two custodians who had been in the cafeteria testified that they had been tricked into leaving the area by another group of students who told them that a custodian in another part of the building was in trouble. When they returned some thirty minutes later they found Ruiz on the floor. No direct connection was established between the two incidents.
School principal Linda Brown testified that responsibility to provide adequate supervision and security for students was delegated to teachers, administrators, and security personnel. However, these employees were not required to remain at the school for more than fifteen to twenty minutes after the last classes ended at 2:45 p.m. Significantly, no one was specifically instructed to watch the small group of students who regularly congregated in the cafeteria area after school to wait for the bus or for rides. Although one custodian testified that he sometimes took this responsibility upon himself, Brown stated that the custodians' responsibilities were limited to cleaning the building. In the case of after school extra-curricular activities, the coach or club sponsor would have supervisory responsibility. Coaches were instructed to remain on campus until the students had secured rides home. However, until practice was over, the coach's responsibility was over the students at the practice. The JV coach testified that it was not his duty to patrol the cafeteria or common areas after practice.
To prevail on a theory of negligent supervision by a teacher, a plaintiff must establish (1) the existence of a teacher-student relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty by the teacher; and (3) the proximate causation of the student's injury by the teacher's negligence. Collins v. *477 School Board of Broward County, 471 So.2d 560 (Fla. 4th DCA 1985). In Collins, this court found a duty of supervision to exist where a substitute teacher was conducting a shop class in which a student was sexually assaulted. 471 So.2d at 564. One of the controlling factors identified in Collins was the fact that class was in session and the school had an absolute right to control the students' behavior at that time. Id. In contrast is Benton v. School Board of Broward County, 386 So.2d 831 (Fla. 4th DCA 1980), in which the court found no duty to exist where a kindergarten student left the class unaccompanied to go to the bathroom, and another student closed the bathroom door on her finger. 386 So.2d at 834. The court in Benton viewed the imposition of a duty in that case to be "demonstrably unreasonable," for it would require the teacher to abandon her co-existing responsibility to the remainder of the class. Id., see also Rupp v. Bryant, 417 So.2d 658, 668 n. 26 (Fla. 1982) (duty will not be imposed where inconsistent with duty to supervise generally). With respect to the responsibility of the JV coach, we think Benton is more closely analogous to the present facts. If a kindergarten teacher is held not to have a duty to leave her class behind and accompany one student to the bathroom, then surely it cannot be said that a football coach has a duty to leave an ongoing practice to accompany a sixteen year old student to the telephone.
Although we agree with the School Board's contention that an inadequate case has been made as to any breach of supervision by the JV coach, we believe there was sufficient evidence for the jury to find a breach of the duty to provide adequate security to its students. While a school board is not an insurer against a student being injured, the school board is entrusted with the care of the students and has a legal duty to properly supervise student activity. Rupp, 417 So.2d at 666; Benton, 386 So.2d at 834. The question is whether the absence of any supervisory personnel in the cafeteria area at the time of the beating constituted actionable negligence.[1] In other words, did the school have a duty to provide some form of security in this area to prevent incidents from occurring? The School Board argues that this duty is foreclosed by Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980). Relyea held that the decisions of a university regarding "whether to provide security guards, parking attendants, security gates, and the numbers thereof" are discretionary and protected by sovereign immunity. 385 So.2d at 1382. We cannot agree that Relyea controls.
Initially we would note that there are obvious differences between the supervisory and security responsibilities at a state university, like the one involved in Relyea, and a public high school. The age of the children and the authority of the school over them are significant factors. In both Benton and Collins we confirmed the existence of a duty to provide supervision and protection to minor students on the school premises. In our view, this duty includes responsibility for a centrally located part of the school building which students regularly occupy with the school's consent and knowledge during the hours immediately after the end of classes. The school's duty to provide supervision does not end when the bell rings. If anything, the time period immediately after the end of school presents the greatest danger of misconduct by students who have been restrained all day in a disciplined setting. In addition, while there was testimony that no one was specifically assigned to patrol the cafeteria area after school, the school itself recognized the need for supervision by adopting a comprehensive system of supervision and patrols designed to prevent students from being left alone on the campus either during the school day or during after-school activities. Accordingly, we conclude that there was evidence on the issue *478 of duty to provide supervision at the time and place in question.[2]
We also reject the contention advanced by the School Board "that under no circumstance it is [sic] foreseeable that fighting will occur when no more than a handful of students are in an area waiting to be picked up from school."[3] The Florida Supreme Court's opinion in Rupp directly refutes this position:
Whether a principal's or teacher's failure to supervise a student was the proximate cause of injuries suffered by a student is the issue most consistently litigated in negligent school supervision cases. The issue is usually complicated by the simultaneous tortious conduct of fellow students, so that the question becomes one of whether the fellow students' negligence was the intervening cause of the harm. Two distinct standards have developed. The first holds that a teacher's absence leading to an injury to one student by another can be the proximate cause of the injury only if the injury could not happen while the teacher was present. These cases generally find student misbehavior is the proximate and superceding cause of the harm. See Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (1949). The second, and more reasonably supported, holds that certain student misbehavior is itself foreseeable and therefore is not an intervening cause which will relieve principals or teachers from liability for failure to supervise:
"[W]e should not close our eyes to the fact that .. . boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, are not accustomed to exercise the same amount of care for their own safety as persons of more mature years." Recognizing that a principal task of supervisors is to anticipate and curb rash student behavior, our courts have often held that a failure to prevent injuries caused by the intentional or reckless conduct of the victim or a fellow student may constitute negligence.

Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 748-49, 470 P.2d 360, 364, 87 Cal. Rptr. 376, 380 (1970). Courts following this standard find that a lack of deportment in unsupervised students is to be expected. Thus roughhousing or hazing at a high school club initiation is behavior which is not so extraordinary as to break the chain of causation between the school's failure to supervise and the injury to the student. See, e.g., Sheehan v. St. Peter's Catholic School, 291 Minn. 1, 188 N.W.2d 868 (1971); Titus v. Lindberg, 49 N.J. 66, 228 A.2d 65 (1967); Cirillo v. City of Milwaukee, 34 Wis.2d 705, 150 N.W.2d 460 (1967); Chappel [v. Franklin Pierce School District, 71 Wash.2d 17, 426 P.2d 471 (1967)].
We perceive that the Dailey standard more nearly comports with Florida negligence law which recognizes that the intervening negligence of a third party *479 does not relieve the original tortfeasor of his negligence if the intervening negligence is foreseeable. See Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980); Vining [v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1977)]. A standard which recognizes that certain student misconduct will foreseeably occur when students are left unsupervised fulfills the definition in Gibson v. Avis Rent-a-Car System, Inc., 386 So.2d 520 (Fla. 1980) which finds an intervening cause foreseeable when "`in the field of human experience' the same type of result may be expected again." Id. at 522-23.
417 So.2d at 668-69 (footnotes omitted) (emphasis in original). A breach of the school's duty would be established by a failure to exercise reasonable care in discharging the duty of supervision. In this case the jury was entitled to find under the evidence presented that no supervision was provided at the time and place of the assault and that such supervision, if provided, would have prevented the assault from occurring. See Collins, 471 So.2d at 564-65; Rupp, 417 So.2d at 668 n. 27. In summary, we find that the lower court did not err in refusing to set aside the jury's verdict, as there was sufficient evidence for the jury to find for Ruiz on his negligent supervision claim. While we are concerned that a public school should have to bear the cost of injuries intentionally inflicted by its students, we believe that the circumstances involved herein were such that a jury question was presented on the school's responsibilities to its students, and we have no authority to second-guess the jury's decision.
The Board also asserts error in the failure of the trial court to instruct the jury on assumption of risk and comparative negligence by Ruiz. This court has set forth the standard of review when a proffered instruction is rejected. See Davis v. Charter Mortgage Company, 385 So.2d 1173 (Fla. 4th DCA 1980). In this case, we find no factual support for an instruction on assumption of risk or comparative negligence. The School Board asserts that the testimony of Lateasea Fredericks tended to show that Ruiz voluntarily engaged in a fight. On the contrary, we believe the only reasonable interpretation of that testimony is that Ruiz was attacked without provocation and that in attempting to retreat, Ruiz was struck first from behind with a blow to the neck, and was then knocked unconscious after being hit with a garbage can. There was no evidentiary basis for the requested instructions, and the lower court correctly so recognized.
The Board next contends that the trial court erred in denying its objections to testimony that a student involved in the incident was "a dangerous guy." Lateasea Fredericks, asked in her deposition to describe Jimmy Wright, stated: "He's about medium height, black male with medium afro, that's about all I can say about him. He's a dangerous guy, I guess." Counsel for the School Board did not object to this answer during the deposition. At trial, the court overruled the School Board's objection to the admission of this statement because of the School Board's failure to object at the time of deposition. We do not believe this ruling was reversible error. Initially, we note that it was defense counsel's own open-ended question which elicited the response which he later sought to exclude. Moreover, we find any possible error to be harmless, since this testimony was cumulative to other similar statements made by Fredericks about Wright and the other boys, to which no objections were made at trial.
Finally, we reject the Board's contention that the trial court erred in permitting the jury to have a portion of the examining physician's testimony read back to them because such testimony had the tendency to embellish the damages. If there was any error here, it favored the School Board, as the substance of the testimony was that Ruiz had not suffered any permanent injuries. There is no rule of civil procedure on point, but Florida Rule of Criminal Procedure 3.410 provides that the court has the discretion to reread portions *480 of testimony. In our view, the rule urged by the School Board, that no testimony may be reread to the jury, defies any policy that would promote a carefully considered verdict.
Accordingly, the judgment based upon the jury verdict is affirmed.
WALDEN, J., and COWART, EDWARD D., Associate Judge, concur.
NOTES
[1] Again, we note that the School Board did not contend at trial, nor does it argue on appeal, that the custodians in the cafeteria area had supervisory responsibilities.
[2] For the same reasons we reject the School Board's contention that the instruction given to the jury on the issue of the duty of the school to reasonably provide for the supervision of its students, was an inaccurate statement of law. The instruction given was derived from this court's decision in Benton, and in no way implied that the school had a duty to allocate its security resources in a way not required by Relyea.
[3] The appellee also maintains that the incident was foreseeable because numerous previous incidents of violence were documented at the school. The court below was presented with the difficult evidentiary issue of whether these prior incidents were sufficiently similar in nature and location to the attack on Ruiz to admit as evidence on foreseeability. This court need not resolve the issue, as the finding of foreseeability is sustainable on other grounds. However, in our view prior acts of violence between students on the school grounds, even though occurring during school hours would be relevant to the issue of whether acts of violence may be expected immediately after school hours while students are still on the grounds. While the circumstances may not be as compelling, such acts demonstrate that misconduct may be anticipated to take place spontaneously if the students are left unsupervised.