S.W. and J.W., as parents and natural guardians of A.M.W., Respondents,

v.

**SPRING LAKE PARK SCHOOL DISTRICT NO. 16, Appellant.**

No. C9–98–1912.

Court of Appeals of Minnesota.

May 4, 1999.

872

Kathleen Flynn Peterson, Mullen J. Dowdal, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, for respondents.

Kay Nord Hunt, Ehrich L. Koch, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Considered and decided by AMUNDSON, Presiding Judge, ANDERSON, Judge, and HOLTAN, * Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant challenges the district court's rejection of its motion for summary judgment on the ground it is entitled to vicarious official immunity. Because appellant is not entitled to share in the immunity granted to its employees, we affirm. We also grant respondents' motion to strike a portion of appellant's reply brief.

## FACTS

This personal injury action was brought on behalf of A.M.W. by respondents, A.M.W.'s parents, against appellant Spring Lake Park School District No. 16. Respondents allege that a December 1, 1994, rape of A.M.W. occurred as a result of appellant's failure to provide adequate supervision, protection, and security, and failure to enact and enforce appropriate security policies.

On the day of the assault, A.M.W., a student at Spring Lake Park High School, went to the school swimming pool for a swimming test. After completing the test, she returned to the girls' locker room to change her clothes. Approximately ten minutes later, A.M.W. ran to the office of her swim instructor, Joan Bruggenthies, and told her that she

had been raped. Eric Little was later convicted of first-degree sexual assault and kidnapping.

Prior to the assault, appellant's employees had noticed Little on the premises but failed to question him regarding his presence on school grounds. The failure to confront Little – the essence of respondents' suit – is in part due to Little's disguise. Little was neatly dressed and carried what appeared to be flower boxes. He was first noticed by Barbara Camp, a secretary in appellant's Community Services Program, at about 11:40 a.m. near a school entrance. Camp asked if she could help him but Little only muttered some incoherent response, thanked Camp, and moved on.

Shortly thereafter, Little was seen again, this time by Bruggenthies, who worked part time for appellant as a water safety instructor and assistant pool director. Bruggenthies saw Little from her desk in the pool area at about noon. Little was standing between the swimming pool and bleachers, and, at the time, Bruggenthies concluded that he must have reached that area by passing through the girls' locker room. Bruggenthies explained that the building layout makes it easy to become disoriented and it was not unusual for male visitors to wind up walking through the locker room. While Bruggenthies thought Little was delivering flowers, she left her office and walked toward the lobby to inquire as to Little's presence and purpose in the building.

In the lobby, she met Michael Brama, a school custodian. Brama had also seen Little exit from the girls' locker room into the lobby area at about the same time. Brama was accompanying a pool maintenance worker at the time and said to the worker, "it's funny that there's somebody coming out of the girls' locker room." Little reacted to Brama, but, like Camp, Brama did not understand Little's remarks.

Later, Camp again saw Little, sometime between 12:15 and 12:40 p.m. in the same location, near a school entrance. This time Little was speaking to a student, and Camp

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 10.

explained that she thought Little looked like a delivery person. Furthermore, while Camp thought that Little had a definite "purpose" for being there based on the flower boxes, she also stated that Little did not belong in that location because it was not the main entrance to the school.

Apart from the above, Camp, Bruggenthies, and Brama (the employees) did nothing else in response to Little's presence. A.M.W. reported for her swim test. After finishing her test, she entered the girls' locker room and was assaulted by Little. Bruggenthies was not in the locker room, and she stated she had never previously encountered a situation where a student needed help in the locker room.

Initially, appellant claimed both discretionary and vicarious official immunity from respondents' suit. The discretionary immunity defense was rejected by both the district court and this court and affirmed by the supreme court.

But, while the district court also rejected appellant's vicarious official immunity defense and we affirmed that decision, the supreme court reversed. *S.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19 (Minn. 1998). We previously rejected vicarious official immunity because we believed that imposing liability would encourage employees to exercise care in the future, without discouraging or inhibiting the decision-making or performance of those employees whose conduct is at issue. *See generally S.W. v. Spring Lake Park Sch. Dist. No. 16*, 566 N.W.2d 366 (Minn.App.1997). Yet, the supreme court concluded that we had failed both to determine the precise duty that triggered liability and whether appellant deserved immunity based on the employees' reaction to that duty. In remanding to the district court, the Minnesota Supreme Court asked for resolution of two issues: "(1) whether there is a common-law duty in Minnesota for the protection of school children; and (2) if that duty exists, whether it specifically relates to the conduct of [the employees]." *S.W.*, 580 N.W.2d at 24.

## ISSUES

Did the district court err in denying appellant's motion for vicarious official immunity?

**A.** Did the district court err in concluding that Minnesota school districts have a common-law duty to protect school children?

**B.** Did the district court err in analyzing this common-law duty as precluding appellant's employees from official immunity?

**C.** If appellant's employees are entitled to official immunity, does appellant share in that immunity?

## ANALYSIS

On appeal from summary judgment, a reviewing court must determine whether there are any genuine issues of fact and whether the district court erred in its application of the law. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn.1998). The applicability of immunity is a question of law, which an appellate court reviews de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn. 1996).

Generally, an order denying a motion for summary judgment is not appealable unless the district court certifies the issue presented as important and doubtful. Minn. R. Civ. App. P. 103.03. While the district court did not make such a certification, an exception to the general rule exists where the motion is based on governmental immunity from suit. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986). The Minnesota Supreme Court has recognized that, if the government is entitled to immunity, it "should not be forced to endure the expense and delay of proceeding to trial." *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832 (Minn.1995) (noting that immunity " 'is effectively lost if a case is erroneously permitted to go to trial' ") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)).

On appeal, we are asked to determine whether the school district is entitled to vicarious official immunity. Such an assessment requires us first to evaluate whether official immunity applies. *Wiederholt*, 581

N.W.2d at 315. Accordingly, we determine first whether the employees are entitled to official immunity, and second, if so, whether appellant may share in the employees' immunity from suit.

In 1963, the Minnesota legislature passed the Municipal Tort Liability Act, imposing the possibility of liability on every municipality for its torts. Minn.Stat. § 466.02 (1998). A school district, such as appellant, is defined as a "municipality" under the Act and hence is also liable for its torts. Minn.Stat. § 466.01 (1998). There is, however, a common-law exception to such liability – official immunity.

The official immunity doctrine ensures that " 'a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong.' " *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988) (quoting *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). Respondents do not allege that appellant committed a willful or malicious wrong, so we consider whether official immunity exists under the facts of this case.

The extension of official immunity is qualified by the requirement that the discretion is exercised on at least the operational level and requires something more than the mere performance of "ministerial" duties. *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992). The doctrine is designed to "protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Elwood*, 423 N.W.2d at 678.

In addition to the complexities associated with applying the common-law doctrine of official immunity, the supreme court has added two more steps: the court remanded for a determination of (1) whether a common-law duty exists to protect school children, and (2) how that duty specifically relates to appellant's employees. *S.W.*, 580 N.W.2d at 24.

### A.

We affirm the district court's conclusion that there is a common-law duty under Minnesota law for the protection of school children. While the parties do not dispute that schools owe such a duty, both focus on this issue in the hope of defining its application to appellant's employees. As a result, we, too, must first define this issue. "The existence of a legal duty is generally a question of law, subject to de novo review." *Johnson v. State*, 553 N.W.2d at 49.

In the seminal school duty case, *Sheehan v. St. Peter's Catholic School*, 291 Minn. 1, 3, 188 N.W.2d 868, 870 (1971), the supreme court required school districts to exercise ordinary care to prevent foreseeable misconduct of other students. *See also Fallin v. Maplewood–North St. Paul Dist. No. 622*, 362 N.W.2d 318, 321 (Minn.1985) (adopting a reasonable care duty to schoolchildren). While school districts may not be liable for sudden, unanticipated misconduct, they are nevertheless liable for sudden conduct that was foreseeable and that "probably could have been prevented by the exercise of ordinary care." *Raleigh v. Independent Sch. Dist. No. 625* 275 N.W.2d 572, 576 (Minn. 1978). The court in *Raleigh* emphasized that foreseeability creates the duty of ordinary care. *Id.*

As noted, these cases acknowledge a duty of ordinary, or reasonable, care only if a threat is foreseeable. Here, as in prior cases, we must determine the foreseeability of Little's sexual assault of A.M.W., which, in turn, determines the existence of a duty.

The district court concluded, as do we, that Little's attack was foreseeable. We reject, however, respondents' contention that we are bound by the district court's finding. While in close cases foreseeability may be for jury resolution, in clear cases, it should be decided by a court as a matter or law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn. 1985). We determine that the foreseeability finding is clear and affirm the district court's foreseeability finding.

Foreseeability requires actual, not constructive, knowledge of a dangerous condition. *Andrade v. Ellefson*, 391 N.W.2d 836, 841 (Minn.1986). The realization of such knowledge imposes "a special duty to do

something about that condition." *Id.* Such foreseeability does not require the notice of the danger. *Raleigh*, 275 N.W.2d at 575; *but see Cooney v. Hooks*, 535 N.W.2d 609, 612 (Minn.1995) (extending immunity by relying on a lack of notice as precluding foreseeability; in so relying on the absence of notice, the court rejected claimant's contention that the issue of foreseeability was a question for the jury).

Appellant contends that Little's attack was unforeseeable. Minnesota courts have addressed this issue in prior school cases. In *Sheehan*, the court affirmed a finding of foreseeability because the injury-causing incident, student rock-throwing, had been going on for three to four minutes before the actual injury occurred. 291 Minn. at 5, 188 N.W.2d at 871. In *Raleigh*, the supreme court affirmed foreseeability of the slashing of a student's wrist with a knife after a showing of a documentary about Martin Luther King, particularly basing its ruling on the existence of substantial racial tension among the high school class prior to viewing the film, that the film contained scenes of racial violence, and that racial slurs were uttered during the movie, all of which should have alerted school personnel to the threat of an injury-causing incident. 275 N.W.2d at 573–76.

Which brings us to our case and the existence of foreseeability. While both *Sheehan* and *Raleigh* were decided by a jury and were linked to the broader issue of liability, we need only to decide the threshold issue of foreseeability. In so deciding, we first confront the fact that all three employees noticed Little. Moreover, such notice was accompanied by a clear reaction that Little was not a student and was not where he belonged. Camp noticed that Little had entered at the wrong building entrance, at which she had seen him twice within the span of an hour. Bruggenthies saw Little enter the pool area from the girls' locker room. Brama saw Little exit from this same girls' locker room. All the employees were alerted to a non-student wandering the halls, obviously out of place (based on his disguise), and the latter two employees had seen him pass through a girls' locker room.

Appellant argues that each employee had reason to excuse Little's presence. While Camp may have been duped by Little's disguise, and Bruggenthies understood that men had previously passed through the girls' locker room by mistake, we note that the employees were alerted to Little's existence and they understood his presence was out of the ordinary. As such, appellant cannot reasonably argue that Little's attack was unforeseeable – Little's anomalous presence was known to the three employees. At trial, appellant may use such facts in the attempt to limit liability, but, as to a duty, appellant's employees failed to react to Little's presence despite the fact that all three admittedly were aware that he was not a student and did not belong on school premises.

## B.

While our foreseeability analysis determines which act should receive attention, an immunity analysis must focus on the nature of the undertaken act. *S.L.D. v. Kranz*, 498 N.W.2d 47, 50 (Minn.App.1993). The *Kranz* court noted the difficulty of categorizing an act as discretionary or ministerial. Yet, the distinction serves the policy behind the doctrine:

> Imposing liability for discretionary acts would deter public officials from exercising their judgment when making the difficult decisions often necessary to effectuate the public policies mandated by law. On the other hand, imposing liability for ministerial acts merely encourages public officials to exercise care while performing duties that require little or no independent judgment.

*Id.*

The district court ruled that the employees' reactions to Little's presence were not exercises of discretion and therefore the school district was not immune from liability. Respondents argue to this court that, even if discretion were exercised, it does not warrant the application of official immunity.

The supreme court has relied on the nature, quality, and complexity of a decision-making process to determine whether official immunity applies. *Williamson v.*

*Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (ruling that tearing down a house was ministerial, despite the exercise of independent decisions). A ministerial act is either the implementation or exercise of established public policy, *Terwilliger v. Hennepin County*, 561 N.W.2d 909, 913 (Minn.1997), or the application of specific written guidelines. *Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 221 (Minn.1998). While a discretionary act reflects professional goals and factors of a situation, a ministerial duty is "one in which nothing is left to discretion; it is 'absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts.'" *Wiederholt*, 581 N.W.2d at 315 (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). The *Terwilliger* court further explained that "[t]he exercise of some degree of judgment or discretion will not necessarily confer immunity: 'the crucial focus is upon the nature of the act.'" 561 N.W.2d at 913 (quoting *Elwood*, 423 N.W.2d at 677).

▪ It is the precise nature of the reaction of the employees that leads to our conclusion that they deserve official immunity. We distinguish those cases cited by respondents to support the argument that the employees' reactions to Little were ministerial acts. While immunity was denied to the employees in *Williamson* and *Terwilliger*, it was because the employees had relied on an official policy or guideline above which their decision-making had not risen. While decision-making had occurred, it occurred only within the confines of the policy.

However, no security policy exists in the present case, and the employees were specifically exempted from applicable school guidelines. *See S.W.*, 580 N.W.2d at 22. Their reactions were clearly non-ministerial acts.

All three employees reacted to Little's presence: Camp and Brama actually spoke with him, and Bruggenthies left her desk to further investigate his presence. None of these reactions was directed by school policy and, in fact, their actions drew the employees

away from what were ministerial acts. The employees had to make a decision as to whether or not to pursue and investigate. Negligence is not a factor at this point in the analysis, and we do not pass judgment on the decision actually made. It is sufficient to note that the employees' discretionary acts deserve the protection of official immunity.

### C.

▪ Just as the district court concluded, however, we are not willing to extend this immunity to appellant. Appellant argues that the rationale behind official immunity requires the extension of immunity because it would be inconsistent to impose liability on a municipality for the very acts for which its employees received immunity.

▪ Generally, if an employee is found to be immune, then the claim against the municipal employer has been dismissed without explanation.[1] *See Pletan*, 494 N.W.2d at 42 (recognizing the doctrine of vicarious official immunity).

Frequently, governmental entities must provide compensation for harm caused by a public official, despite the absence of personal liability on the part of the official. *Kranz*, 498 N.W.2d at 51 (citing *Holmquist v. State*, 425 N.W.2d 230, 233 n. 1 (Minn.1988)). The court in *Kranz* focused on whether the threat of liability against the government would unduly influence a government employee's judgment in pursuit of a legitimate public policy choice, and if such influence exists, then the government will vicariously benefit from the employee's official immunity. *Id.* The supreme court has justified extending immunity vicariously on the ground that "to grant immunity to the [employee] while denying it to the [employer] would still leave the focus of a stifling attention on the [employee's] performance, to the serious detriment of that performance." *Olson v. Ramsey County*, 509 N.W.2d 368, 372 (Minn. 1993).

---

1. While the employees have not been named parties in this action, an employer generally may be protected by vicarious official immunity even if the employee in question is not named a defendant in the suit. *Wiederholt*, 581 N.W.2d at 317.

Minnesota has adopted a rule that vicarious official immunity automatically follows a finding of official immunity only in high-speed police pursuit cases. *Pletan*, 494 N.W.2d at 43. The *Pletan* court recognized "in the final analysis, whether to extend official immunity to the government employer is a policy question." *Id.*

 The supreme court has explained that the grant of vicarious official immunity should be "based on the nature of an employee's immune conduct." *Wiederholt*, 581 N.W.2d at 316. Official immunity has generally only been extended to an employer when the employee had performed an operational act within the confines of an assigned duty. *See Olson*, 509 N.W.2d at 372; *Pletan*, 494 N.W.2d at 43. The application under such circumstances leads to the conclusion that, generally, immunity attaches vicariously when the nature of the conduct is within the confines of an assigned duty. Yet, in the present case, the school district had not assigned a duty applicable to the employees' operational acts.

We decline to extend vicarious official immunity in this case and affirm the district court's conclusion on this issue. To hold otherwise would be to reward the school district for its failure to develop and implement a basic security policy that would have applied in these circumstances.

 Finally, we concur with and grant respondents' request to strike the "Dangerous Weapons" report included in appellant's reply brief appendix and related arguments at pages six and seven in the reply brief. Rule 110.01 to the Minn. R. Civ.App. P. states, "The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Moreover, "[t]his court will grant a motion to strike material submitted in a party's appendix when that material did not come before the trial court." *Cressy v. Grassmann*, 536 N.W.2d 39, 43 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995) (citation omitted). Because this material was not submitted to the trial court, we refuse to review it now.

## DECISION

The district court correctly denied appellant's claim to vicarious official immunity. While we disagree with the district court's holding that appellant's employees are not entitled to official immunity, we conclude that appellant failed to demonstrate grounds for the extension and application of vicarious official immunity. In addition, we grant respondents' motion to strike a report included in the appendix to appellant's reply brief as well as all arguments based on this material.

**Affirmed; motion granted.**