John J. KILLEN, Trustee for the next of kin of Jill M. Dibley, Deceased, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 706, Defendant and Third–Party Plaintiff, Respondent,

v.

John and Gayle DIBLEY, Third–Party Defendants,

and

John J. KILLEN, Trustee for the next of kin of Jill M. Dibley, Deceased, Appellant,

v.

Frank FABISH, Defendant and Third–Party Plaintiff, Respondent,

v.

John and Gayle DIBLEY, Third–Party Defendants, Respondents.

No. CX–95–2505.

Court of Appeals of Minnesota.

May 7, 1996.

Joseph J. Roby, Jr., Thomas R. Thibodeau, Laura J. Schacht, Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for appellant.

Kay Nord Hunt, Ehrich L. Koch, Sherri D. Ulland, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and TOUSSAINT, C.J., and MANSUR, J.

## OPINION

LANSING, Judge.

In a wrongful death action, the district court concluded that a school district and its guidance counselor were immune from liability for a student's at-home suicide. We affirm the application of discretionary function immunity to the district's lack of a suicide prevention policy and the application of official immunity to the guidance counselor's decision on when to tell parents that a student expressed suicidal thoughts.

## FACTS

A ninth grade student in the Virginia, Minnesota school district, who had stayed home from school, obtained a loaded gun from her parents' basement and fatally shot herself in the chest. The student, Jill Dibley, had first expressed suicidal thoughts to her school guidance counselor, Frank Fabish, five months earlier in September 1993. The guidance counselor informed the student's parents that the student had expressed suicidal thoughts and recommended professional counseling.

The parents obtained professional counseling for the student. A psychologist diagnosed the student as suffering from clinical depression. The psychologist told the parents that progress was being made but warned that the student was not out of danger of suicide. This information was not provided to the school district or the guidance counselor.

In December 1993 the student wrote an essay for her English class about a teenage girl committing suicide by shooting herself in the chest. The student's English teacher, Mary Strasser, questioned her about the essay and reported it to the guidance counselor. This information was not provided to the student's parents.

On the evening of January 6, 1994, another school counselor, Kathy Neff, received a telephone call from a friend of the student. The friend told Neff she had received a letter from the student that said she intended to get a gun from the basement of her home and kill herself. The next morning, January 7, Neff contacted the guidance counselor about the telephone call.

Late in the afternoon on Friday, January 7, the guidance counselor spoke to the student about her suicidal statements. The student told the counselor that she only considered suicide when she was fighting with a parent and that she was not thinking about it now. The student also told the guidance counselor that she was in counseling. The guidance counselor spent about fifteen minutes with the student and told her he wanted to see her the following week. The guidance counselor did not contact the student's parents about the letter or the conversation.

With her parents' knowledge, the student stayed home from school on Monday, January 10 and Tuesday, January 11. On January 11 the student fatally shot herself with a loaded gun kept in the basement of her home.

The school district had no policy on student suicide prevention. The district maintained a "Student Manual" and a "Faculty Manual" that discussed issues relating to student dress, behavior, and discipline, but neither manual specifically addressed suicidal students.

## ISSUES

I. Is the school district entitled to discretionary function immunity from claims alleging failure to develop and implement a suicide prevention policy?

II. Is the guidance counselor entitled to official immunity for decisions on when to notify parents of a student's expressed suicidal thoughts?

## ANALYSIS

The application of discretionary function immunity and common law official immunity is a question of law when the material facts are undisputed. *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 786 (Minn.1989) (discretionary immunity); *Carradine v. State,* 494 N.W.2d 77, 80 (Minn.App.1992) (official immunity), *aff'd in part, rev'd in part,* 511 N.W.2d 733 (Minn.1994).

## I

Discretionary function immunity protects a government entity from tort liability for a claim based on "the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1994); *Pletan v. Gaines,* 494 N.W.2d 38, 43 (Minn.1992). The purpose of discretionary function immunity is to preserve the separation of powers by protecting executive and legislative policy decisions from judicial review through tort actions. *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 718 (Minn.1988).

The critical question in determining whether discretionary function immunity applies is whether the specific conduct involves the balancing of policy objectives. *Id.* at 722. A protected, planning level decision involves a question of public policy and the balancing of competing social, political, or economic considerations. *Pletan,* 494 N.W.2d at 43–44; *Nusbaum,* 422 N.W.2d at 719–20. Operational decisions, unlike planning level decisions, involve the day-to-day workings of a governmental unit, and these implementation decisions are not protected. *Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988).

The governmental unit, in this case the school district, bears the burden of proving that its actions are immune from liability. *Nusbaum,* 422 N.W.2d at 722. When determining whether immunity applies, we identify and focus on the precise governmental conduct being challenged. *Id.*

The trustee challenges the school district's failure to develop and promulgate a suicide prevention policy. A school district's policymaking is a protected discretionary function. *Pletan,* 494 N.W.2d at 44 (immunizing a school district's policymaking when it necessarily involved consideration of costs, safety, and educational goals). The decision whether to create a policy on student suicide would require the district to carefully weigh considerations about the role and function of guidance staff, the financial resources available for training, privacy of students, intimacy of student-teacher relationships, district involvement with mental health-care providers, educational methods, public attitudes, and the efficacy of particular approaches. Because development of a suicide prevention policy involves questions of public policy and the balancing of competing interests, the development of a suicide prevention policy is a protected discretionary function.

The district did not develop a suicide prevention policy. Discretionary function immunity protects both the development and the nondevelopment of a policy. Minn.Stat. § 466.03, subd. 6 (immunity extends to performance or failure to perform a discretionary function). Discretionary function immu-

nity protects the school district's failure to adopt a suicide prevention policy.

## II

A public official charged by law with duties that call for the exercise of judgment or discretion is not personally liable to an individual for damages unless the official's actions are willful or malicious. *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988). This common law official immunity protects an individual's acts that call for the exercise of judgment and discretion. *Pletan*, 494 N.W.2d at 40. Acts that are nondiscretionary, imperative, or prescribed by policy, are not protected. *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991).

The trustee alleges that the guidance counselor negligently failed to notify the student's parents that the student was contemplating suicide.[1] The trustee has made no allegation that the guidance counselor committed a willful or malicious wrong, and no evidence exists that even suggests that the counselor's actions were willful or malicious.

The counselor's responses to the student's statements were necessarily based on an exercise of his professional judgment, taking into consideration his knowledge about the student's problems, his observations of her, his education and training, and his experience dealing with troubled teenagers. The tragedy of the student's death is even more painful with the possibility that more communication or differently timed communication might have prevented it. But the facts demonstrate the many factors that affect such a decision, and the issue is not whether, in hindsight, a different decision might have averted the tragedy. The question is whether the alleged failure to act is discretionary, to which official immunity applies, or ministerial, to which immunity does not apply. We think this is a situation requiring the exercise of significant, independent judgment and discretion. Official immunity protects the guidance counselor's decision on whether or not to immediately inform the student's parents about her statements.

## DECISION

Because we conclude that the school district and the guidance counselor are entitled to immunity, we affirm the district court's summary judgment.

**Affirmed.**

MANSUR, Judge (concurring in part, dissenting in part).

I concur with the majority's decision that the school district is entitled to discretionary function immunity with respect to its failure to adopt a suicide prevention policy. I do note, however, that two separate and distinct decisions are involved here: the first is the failure to adopt a written suicide prevention policy, and the second is the school district's delegation of decisions involving suicidal students to its guidance counselors.

I respectfully dissent on the issue of whether Fabish (and the school district vicariously) is entitled to official immunity for the decision not to notify Jill Dibley's parents that she had expressed suicidal ideations. Again, I believe that the challenged conduct encompassed at least two distinct decisions: the first involved the formulation of guidelines for determining when parental notification was necessary, and the second involved the implementation of that policy in this case.

With respect to the first decision, it is clear that Fabish was performing a duty that had been delegated to him by the school district. That duty was somewhat defined by the student and faculty manuals, which outlined various procedures to deal with student problems and often involved parental notification. Fabish himself further defined the duty when dealing with possibly suicidal students as "to determine the veracity of the student's intentions and if further intervention is necessary." Fabish outlined the factors that he considered before involving a student's parents or referring a student for professional help: he first determined whether the situa-

---

1. The trustee agrees that if the guidance counselor is entitled to official immunity, the school district is vicariously immune for the counselor's actions and decisions. *Olson v. Ramsey County,* 509 N.W.2d 368, 372 (Minn.1993); *Pletan,* 494 N.W.2d at 43.

tion was "serious enough," and then determined whether the student's health and well-being outweighed his concern for the student's privacy needs. I believe that the policy Fabish followed regarding when to notify parents was clearly made at an operational level and is entitled to official immunity. *See Olson v. Ramsey County,* 509 N.W.2d 368, 371–72 (Minn.1993) (social worker entitled to official immunity for making and formulating case plan, which involved professional planning at operational level, but not for implementing that plan, which involved execution of assigned, ministerial tasks); *Larson v. Independent Sch. Dist. No. 314,* 289 N.W.2d 112, 120–21 (Minn.1979) (while decision for physical education instructor to teach headspring may have been made at policy-level, decisions involving manner in which instructor taught headspring were ministerial).

Fabish's implementation of that policy, however, was ministerial in nature and thus not entitled to official immunity. I do not believe that Fabish's day-to-day decisions regarding Jill Dibley involved the exercise of significant, independent judgment or required the balancing of policy choices. *Cf. Terwilliger v. Hennepin County,* 542 N.W.2d 675, 679–80 (Minn.App.1996) (county mental health care workers not entitled to discretionary function immunity for manner in which they administered treatment once decision to treat had been made), *review granted* (Minn. Apr. 1, 1996).

Nor do I believe that imposing liability for these decisions would hamper guidance counselors in their ability to work with students. While guidance counselors must be afforded some degree of discretion, that discretion is not unbounded and must be cautiously exercised when dealing with possibly suicidal students. Given the special status and protection that the law affords students and the gravity of decisions involving suicidal students, I believe that Fabish's failure to notify the Dibleys is not entitled to official immunity. *See Larson,* 289 N.W.2d at 120 (because of schoolchildren's special status and because headspring required advanced gymnastic skills, decisions made by teacher in spotting headspring not entitled to immunity).

In addition, I believe that Fabish and the school district vicariously owed a duty to Jill Dibley in this case. The facts of this case distinguish it from *Donaldson v. YMCA,* 539 N.W.2d 789, 793 (Minn.1995), in which the supreme court held that a lodging house owed no duty to a resident who committed suicide in her room.

In *Donaldson,* the supreme court noted that while a person has no legal duty to act for another's protection, a special relationship may give rise to such a duty when an institution such as a hospital or jail has physical custody or control over the person to be protected. *Id.* at 792. The institution's personnel must also have special training and experience in recognizing suicidal tendencies and have special knowledge of the person's suicidal tendencies. *Id.* at 793. In order to establish the requisite degree of dependence and control, the institution must be in a position to protect the person from committing suicide and to deprive the person of normal opportunities for self-protection, and the person must have some reasonable expectation that the institution will protect her from committing suicide. *Id.*

Similar to these types of institutions, the school district had substantial physical custody and control over its students, including Jill Dibley. While the school district had little control over Jill Dibley's actions when she was at home, it exercised substantial control over her while she was at school. In addition, school district employees had special training and experience in recognizing suicidal tendencies. Those employees had special or actual knowledge of Jill Dibley's suicidal tendencies, as evidenced by her essay, the telephone call another counselor received from one of Jill Dibley's friends regarding a suicidal letter Jill Dibley had written, and Jill Dibley's conversations with Fabish in September 1993 and again on January 7, 1994. Finally, following the Dibleys' September 1993 conversation with Fabish in which he reported Jill Dibley had discussed suicide and in which he indicated he would be "in touch," the Dibleys could reasonably assume that Fabish would again notify them if their daughter expressed fur-

ther suicidal ideations while at school. Under these circumstances, I believe that public policy warrants finding that some duty was owed at least to notify Jill Dibley's parents of her suicidal thoughts and ideations. *See Eisel v. Board of Educ.,* 324 Md. 376, 597 A.2d 447, 456 (1991) (school counselors have duty to use reasonable means to attempt to prevent suicide when on notice of student's suicidal intent).

I would therefore reverse the grant of summary judgment to Fabish and remand the matter to the district court for trial.