**S.W. and J.W., as parents and natural guardians of A.M.W.,**
**Respondents,**

v.

**SPRING LAKE PARK SCHOOL DISTRICT NO. 16,**
**Appellant.**

No. C5–97–18.

Court of Appeals of Minnesota.

July 15, 1997.

Review Granted Sept. 12, 1997.

Kathleen Flynn Peterson, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, for Respondents.

Kay Nord Hunt, Ehrich L. Koch, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Appellant.

Considered and decided by NORTON, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

NORTON, Judge.

Appellant contends that the district court erred by denying its motion for summary judgment because it is protected by statutory and vicarious official immunity. The district court properly concluded that appellant is not protected by statutory or vicarious official immunity. We affirm.

## FACTS

Shortly after 1:00 p.m. on December 1, 1994, A.M.W. went to the Spring Lake Park High School swimming pool to make up a swimming test. After completing the swimming test, A.M.W. went to the girls' locker room to change into her clothes. Approximately ten minutes later, A.M.W. ran to the office of her swim instructor, Joan Bruggentheis, and told her that she had been raped.

A jury later convicted Eric Little of first-degree sexual assault and kidnapping.

At approximately noon that day, Michael Brama, a custodian at the school, had seen Little come out of the girls' locker room. Brama was accompanying a pool maintenance worker at the time and said to the worker, "Funny, there is a guy coming out of the girls' locker room." Nevertheless, Brama did not ask Little why he was in the school or why he was exiting the girls' locker room. At his employment orientation, Brama received a copy of the Spring Lake Park Teachers' Manual, which discusses the school's visitor policy, but he never read it. Brama stated that, as a custodian, there were no policies or practices that he followed regarding strangers in the school.

Barbara Camp, a clerical worker at the school, testified that, at approximately 11:40 a.m. that day, she observed Little at the school's main entrance, which is right in front of the pool entrance. She asked Little if she could help him. He responded, but she did not understand him. Camp did not ask Little to repeat himself because he was black and Camp felt that asking him to repeat himself would be racially insensitive. At approximately 12:45 p.m., Camp left her office to use the restroom when she saw Little again. Camp believed Little was supposed to be in the school because he appeared to be delivering flowers and was speaking to a student. Camp stated that she was aware of no procedures or policies regarding strangers in the school.

Bruggenthies recalled seeing someone resembling Little leaving the girls' locker room at approximately noon that day. The individual was carrying white boxes that appeared to contain flowers. Upon seeing this, Bruggenthies left her office and went out into the lobby where she saw Brama. She mentioned to Brama that it was strange that a man would be coming out of the girls' locker room. Nonetheless, she did nothing because she assumed Little was a delivery person.

The school had a practice of requiring all employees to wear photo I.D. badges. Bruggenthies, Brama, and Camp were aware of this practice and wore the badges themselves. All three noted that Little was not wearing an I.D. badge.

The Spring Lake Park High School Teachers' Manual contains the following sections:

### General Information

This booklet has been prepared in the hope that it will be a guide and a help to teachers as they carry out their tasks at Spring Lake Park High School. * * * *This guide has been prepared for teacher use.* (Emphasis added.)

### Adults in Class

Visits to Spring Lake Park High School by parents and District 16 citizens are encouraged. All visitors to the school must first report to the principal's office.

### Halls and Hall Duty

*Teachers on hall duty* are to be guided by the following instructions: (Emphasis added.)

\* \* \*

6. Refer all visitors to the office for a visitor's pass and assist them if possible.

### School Visitor Guidelines

Visits to Spring Lake Park High School by parents and District 16 citizens are encouraged. All visitors to the school must first report to the principal's office.

On October 12, 1994, Principal Michael Steele issued a memo regarding locker room security, due to a theft that had occurred in a locker room. The purpose of the memo was to inform certain employees that it was their responsibility to assure that unoccupied locker rooms are locked. This memo was not sent to Bruggenthies, Brama, or Camp. The memo stated that Steele was available to help if a plan regarding locker rooms needed to be developed. Alternatively, if a plan was not needed, he expected each department to deal with the problem. Bruggenthies testified that her department never developed a policy; rather, each instructor handled locking the locker rooms individually. It is her practice to keep the locker room doors unlocked when she is in her office. That day, the doors were unlocked because she was in her office throughout the time in issue.

Following the rape, respondents S.W. and J.W., as parents and natural guardians of A.M.W., filed this negligence action against appellant Spring Lake Park School District No. 16 for: (1) failure to provide adequate supervision, protection, and security; (2) failure to enact and enforce appropriate rules, regulations, and policies; and (3) negligent infliction of emotional distress. The school district filed a motion for summary judgment asserting that respondents' claims were barred by statutory and/or vicarious official immunity. Following a hearing on the matter, the district court found that the school district was not protected by statutory or vicarious official immunity. The court issued an order denying the school district's motion for summary judgment and acknowledging respondents' withdrawal of the negligent infliction of emotional distress claim.

### ISSUES

1. Did the district court err in concluding that the school district is not protected by statutory immunity?

2. Did the district court err in concluding that the school district is not protected by vicarious official immunity?

### ANALYSIS

#### Standard of Review

■ "Where a governmental unit claims immunity from suit, an order denying its motion for summary judgment is immediately appealable." *S.L.D. v. Kranz*, 498 N.W.2d 47, 49 (Minn.App.1993), *review denied* (Minn. May 30, 1996). On appeal from summary judgment, this court must affirm unless genuine issues of material fact exist or the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990)

#### 1. Statutory Immunity

■ The school district alleges that the district court erred in concluding it was not protected from liability by statutory immunity. Whether a governmental entity is protected by statutory immunity is a legal question that this court reviews de novo.

*Johnson v. State*, 553 N.W.2d 40, 45 (Minn. 1996).

■ Governmental subdivisions, including the school district, are immune from "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1996). The school district has the burden to prove that it is entitled to statutory immunity. *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 722 n. 6 (Minn.1988).

■ In determining whether conduct is discretionary, a distinction exists between operational or ministerial decisions, which are not protected by statutory immunity, and discretionary planning decisions, which are protected by statutory immunity. *Larson v. Independent Sch. Dist. No. 314*, 289 N.W.2d 112, 119–20 (Minn.1979). "[Statutory] immunity protects the government only when it can produce evidence its conduct was of a policymaking nature involving social, political, or economic considerations, rather than merely professional or scientific judgments." *Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn.1994); *see also Ostendorf v. Kenyon*, 347 N.W.2d 834, 837 (Minn.App.1984) (holding that discretionary acts require balancing of complex and competing factors at planning, rather than operational, stage of development). In contrast, operational decisions relate to the day-to-day operation of government and are not protected by statutory immunity. *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988); *see also Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988) (ministerial duties involve mere execution of specific duty from fixed and designated facts and are not immune).

■ When judging each case, the court must focus "on whether the legislature intended to immunize the particular governmental activity that is the subject of the tort action." *Nusbaum*, 422 N.W.2d at 719. Statutory immunity exists to prevent courts from reviewing after-the-fact "certain policymaking activities that are legislative or executive in nature." *Watson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 412 (Minn. 1996) (quoting *Nusbaum*, 422 N.W.2d at

718). Therefore, if governmental decisions involve political, social, and economic considerations that "lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions." *Id.*

The district court found that the school had a policy requiring visitors to check in at the principal's office to obtain a visitor's pass and a policy requiring locker room doors to be locked. The court observed, however, that whether those policies applied to the facts of this case was immaterial. The court ruled that the critical factor was whether the actions of the employees who saw Little in the school were discretionary. The district court concluded that the conduct of Bruggenthies, Brama, and Camp was at a ministerial or operational level, not at a discretionary level that involved the balancing of political, social, or economic considerations. Therefore, the district court found that the school district was not protected by statutory immunity.

Respondents contend that the school district had policies requiring school employees to refer visitors to the principal's office and to keep unoccupied locker rooms locked. Respondents allege that Bruggenthies, Brama, and Camp failed to implement these policies. This failure, argue respondents, was not the result of discretionary decision-making, but was merely the failure to perform a ministerial duty. Respondents thus maintain that the district court properly concluded the school district was not entitled to statutory immunity.

▆▆▆ We do not agree. The school district did not have a policy applicable to the facts of this case. With respect to the teachers' manual, the school district itself states in its appellate brief:

It is undisputed that the High School Teacher Handbook did not purport to apply as a guide to anyone but the High School's full-time teachers. *The Handbook had no application to custodians, to clerical personnel or to a part-time School District swim instructor.* * * * There certainly was no School District policy that these three individuals had an obligation to

refer Mr. Little to the principal's office for a visitor's pass. (Emphasis added.)

Neither was the memorandum from the school principal regarding the security of student locker rooms a policy pertinent to the facts of this case. This memorandum asked its recipients to ensure either that a plan regarding locker room security be developed or that each department take appropriate action to secure locker rooms. This memorandum was not sent to Bruggenthies, Brama, or Camp. The record does not establish that Camp, a clerical worker in the front office, and Brama, a custodian, had any duty to assure that the locker rooms were locked when unoccupied. Bruggenthies, the swim instructor, stated that no policy was ever developed in response to the principal's memo; rather, each department was responsible for securing the locker rooms independently. Bruggenthies testified that she locked the locker rooms only when she was not in the pool area. On the day A.M.W. was raped, Bruggenthies followed this practice; the doors were not locked because she was in her office. Therefore, not only was there no locker room policy, but even if individual instructor practices could be characterized as school "policy," Bruggenthies had implemented her "policy."

The school district concedes that it had no security policy, but argues that its decision to have no policy is immune from suit based on *Killen v. Independent Sch. Dist. No. 706,* 547 N.W.2d 113, 116 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996). In *Killen,* the trustee of a student who committed suicide brought a wrongful death action against the school district and guidance counselor. *Id.* at 113. The trustee alleged that the school district was negligent because it failed to promulgate a policy regarding student suicide prevention. *Id.* at 116. The court held that the school district's failure to develop and promulgate a suicide prevention policy was protected by statutory immunity because the development of a suicide prevention policy would involve questions of public policy and balancing competing interests. *Id.*

▆▆▆ It is unclear from the *Killen* opinion whether the school district alleged that it did

not adopt a policy due to discretionary policy issues or whether this court was assuming that development of such a policy would involve discretionary policy considerations. We clarify *Killen* by observing that, although a decision not to have a policy or failure to have a policy may be protected by immunity, it is only protected if that decision or failure to act was based on discretionary action involving the balancing of policy considerations. *See Holmquist*, 425 N.W.2d at 232 (exception from liability for discretionary acts is limited to governmental decisions that "involve the balancing of competing public policy considerations"); *Ostendorf*, 347 N.W.2d at 837 (discretionary acts require balancing of complex and competing factors at planning stage); *Watson*, 553 N.W.2d at 412 (courts should not second-guess governmental discretionary decisions based on the weighing of political, social, and economic considerations). If the governmental subdivision exercised no discretion, then statutory immunity is inappropriate. *See* Minn.Stat. § 466.03, subd. 6 (immunity exists to protect governmental subdivisions from claims based on their performance or failure to perform discretionary function).

In this case, the school district does not allege that it decided not to adopt an employee-wide policy regarding visitors or strangers in the school because of policy considerations. Rather, it appears the school district simply decided not to have a policy. This is not the type of decisionmaking that immunity, as an exception to the general rule of liability, should protect. *See Holmquist*, 425 N.W.2d at 231 (statutory immunity for discretionary acts is exception to general rule of liability; thus, court must construe exception narrowly to ensure it does not swallow general rule of liability). Furthermore, the law has established that school children are entitled to special protection from their school. *Larson*, 289 N.W.2d at 121 (citing *Spanel v. Mounds View Sch. Dist. No. 621*, 264 Minn. 279, 291, 118 N.W.2d 795, 802 (1962)). This principle solidifies our conclusion that statutory immunity was not designed to protect the school district's decision not to have a security policy. *See id.* (due to special protection afforded to school children, school principal's decisionmaking was not

type that doctrine of statutory immunity was designed to protect where principal abdicated his responsibility and never engaged in decisionmaking relevant to the development and teaching of physical education curriculum).

Finally, the decisions of Bruggenthies, Brama and Camp not to report Little to the school office are not entitled to statutory immunity because they did not involve the balancing of political, social, or economic considerations. As the district court concluded, the "gravamen of [respondents'] complaint pertains to the actions of employees charged with carrying out day-to-day functions of the school." The district court properly determined that statutory immunity was not available.

### 2. Vicarious Official Immunity

The school district argues that the district court erred by determining that Bruggenthies, Brama, and Camp were not protected by official immunity, thus precluding the school district from claiming vicarious official immunity.

The doctrine of official immunity establishes that:

> a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong.

*Elwood*, 423 N.W.2d at 677 (quoting *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). Official immunity involves discretion that is exercised on an operational level and "requires something more than the performance of merely 'ministerial' duties." *Id.* (quoting *Elwood*, 423 N.W.2d at 677). A ministerial duty is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Id.* (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)); *see, e.g., Larson*, 289 N.W.2d at 120–21 (supervising and teaching gymnastic exercises are ministerial duties); *Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244

(1976) (dismantling abandoned house is ministerial duty).

■ Due to the difficulty of characterizing an action as discretionary or ministerial, it is critical that the purpose behind the official immunity doctrine be served. *S.L.D.*, 498 N.W.2d at 50. Official immunity is "intended to insure that the threat of potential liability does not unduly inhibit the exercise of discretion required of public officers in the discharge of their duties." *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991) (quoting *Holmquist*, 425 N.W.2d at 233 n. 1). Therefore, imposing liability on officials for discretionary acts would be improper because it would deter public officials from exercising their judgment when making difficult decisions. *S.L.D.*, 498 N.W.2d at 50. Alternatively, imposing liability for ministerial acts "merely encourages public officials to exercise care while performing duties that require little or no independent judgment." *Id.*

The district court determined that the school district was not entitled to official immunity because the actions of Bruggenthies, Brama, and Camp involved carrying out ministerial duties that did not involve the exercise of judgment or discretion. The district court concluded that the employees were not protected by official immunity because they were merely implementing a policy at the school regarding visitors and locker room security. Thus, the district court determined that the teachers' manual and locker room memorandum were policies applicable to Bruggenthies, Brama, and Camp.

■ As discussed earlier, the policies the district court refers to are not applicable to the facts in this case. Moreover, the actions of Bruggenthies, Brama, and Camp were not ministerial because no policy or rule imposed a duty on them regarding strangers in the school. Rather, these employees exercised independent judgment regarding Little. Arguably, this exercise of judgment constitutes more than the exercise of a ministerial duty. Thus, as stated above, due to the difficulty of classifying an act as ministerial or discretionary, the ultimate inquiry must be whether granting official immunity would serve the doctrine's purpose. *Id.*

We cannot say that the threat of liability would inhibit these employees from exercising their judgment when making difficult decisions during the course of their duties. *Id.* Rather, imposing liability on these individuals would encourage them to exercise care when seeing strangers in the school. *See id.* 498 N.W.2d at 54 (social worker not entitled to official immunity for failing to communicate information accurately; imposing liability will encourage social worker to exercise care in future). Therefore, the district court properly determined that these employees are not entitled to official immunity. Because these employees are not entitled to official immunity, the school district is not entitled to vicarious official immunity. *Id.* 498 N.W.2d at 54–55.

## DECISION

The district court properly concluded that the school district is not protected by statutory immunity because the school district did not allege that it decided not to have a policy as a result of discretionary policy considerations. The district court properly concluded that the school district is not entitled to vicarious official immunity because imposing liability on the school district will not inhibit the decisionmaking or performance of the employees whose conduct is at issue; rather, imposing liability on the school district will encourage those employees to exercise care in the future.

**Affirmed.**

PETERSON, Judge (concurring specially).

I concur in the result.