S.W. and J.W. as parents and natural guardians of A.M.W.,
Respondents,

v.

SPRING LAKE PARK SCHOOL
DISTRICT NO. 16,
Appellant.

No. C5–97–18.

Supreme Court of Minnesota.

June 4, 1998.

Kay Nord Hunt, Ehrich L. Koch, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellants

Kathleen Flynn Peterson, Mullen J. Dowdal, Robins, Kaplan, Miller, & Ciresi, Minneapolis, for respondents.

## OPINION

PAGE, Justice.

This personal injury lawsuit, brought on behalf of A.M.W., by her parents (A.M.W.), against Spring Lake Park School District 16 (school district), alleges that the school district failed to provide adequate supervision, protection, and security and failed to enact/enforce appropriate security policies which ultimately resulted in 15–year–old A.M.W. being the victim of a brutal sexual assault. In response to the lawsuit, the school district, claiming statutory[1] and offi-

---

1. Minnesota Statutes section 466.02 (1996) provides that municipalities are liable for their torts and the torts of their officers, employees, and agents acting within the scope of their employment or duties. The definition of "municipality" includes school districts. Minn.Stat. § 466.01, subd. 1 (1996). Minnesota Statutes section 466.03, subdivision 6 (1996), provides for an exception from tort liability when the claim is "based upon the performance or the failure to

cial[2] immunity, moved for summary judgment, seeking the lawsuit's dismissal. The district court denied the school district's motion. In denying the school district's statutory immunity claim, the district court found that the school district's employees failed to carry out their duties under the school district's security policy at an operational level. The district court made this finding in the face of the school district's assertion that no security policy existed. With respect to the school district's official immunity claim, the district court found that the conduct of the three employees that gave rise to A.M.W.'s cause of action involved the exercise of a ministerial duty.

The court of appeals affirmed the district court.[3] With respect to the statutory immunity claim, the court of appeals, unlike the district court, determined that the school district did not have a security policy and that "statutory immunity was not designed to protect [that] decision * * *."[4] With respect to the official immunity claim, the court of appeals concluded that granting the school district immunity would not serve the purpose underlying the doctrine of official immunity.[5] In doing so, it reasoned that the threat of liability would not have inhibited the three employees whose conduct is challenged "from exercising their judgment when making difficult decisions during the course of their duties," but would "encourage them to exercise care when seeing strangers in the school."[6]

Because we conclude that the conduct challenged by A.M.W. was at an operational level and not of a public policy-making nature, the school district is not entitled to statutory immunity. With respect to the official immunity claim, we conclude that because the specific duty giving rise to the cause of action is unclear, we remand to the district court. Therefore, we affirm in part, reverse in part, and remand.

In the fall of 1994, A.M.W. was attending high school at the Spring Lake Park School District Complex (school complex). In addition to the high school, the school complex houses the school district's elementary school, day care center, Community Services office, and Board of Education offices. On December 1, 1994, shortly after 1:00 p.m., A.M.W. was the victim of a brutal sexual assault in the girls' locker room next to the school complex swimming pool.

The assailant, Eric Little, neatly dressed and carrying what appeared to be boxes used by florists for delivering flowers, entered the school complex sometime earlier. A school district secretary, Barbara Camp, saw Little at about 11:40 a.m., standing in the entrance to the complex located near the swimming pool. She assumed he was a delivery person and asked if she could help him. Little responded, but the only part of the response that Camp understood was "thank you." At 12:45 p.m., Camp saw Little a second time standing in the same spot, still carrying the boxes and talking with a student, but she did not speak with him.

Joan Bruggenthies, the high school's water safety instructor and assistant pool director, was in her office near the pool, at about 12:00 noon, when she saw Little near the girls'

---

exercise or perform a discretionary function or duty, whether or not the discretion is abused."

**2.** In essence, what the school district was seeking with respect to official immunity was vicarious official immunity. Official immunity protects public officials acting in their official capacity from suit, whereas vicarious official immunity protects the governmental entity from suit when " 'the threat of potential liability [would] unduly inhibit the exercise of discretion required of public officials in the discharge of their duties.' " *Watson v. Metropolitan Transit Comm'n,* 553 N.W.2d 406, 414 (Minn.1996) (quoting *Rico v. State,* 472 N.W.2d 100, 107 (Minn.1991)). No individual official is being sued in this case. However, in order to determine whether the gov-

ernmental entity is entitled to vicarious official immunity, the challenged conduct of the public official which gives rise to the cause of action must be examined to determine whether that public official is entitled to official immunity. Only if the public official is entitled to official immunity will the governmental entity be entitled to vicarious official immunity.

**3.** *See A.M.W. v. Spring Lake Park Sch. Dist. No. 16,* 566 N.W.2d 366 (Minn.App.1997).

**4.** *Id.* at 372.

**5.** *Id.* at 373.

**6.** *Id.*

locker room. Michael Brama, a school district custodian, saw Little at about the same time, in a different location near the girls' locker room and said aloud, "[f]unny, there is a guy coming out of the girls' locker room." Little replied to Brama's comment, but Brama did not understand him. Bruggenthies and Brama discussed Little's presence and determined that the only way Little could have gotten to the place where Brama saw him, without going past Bruggenthies, was if he had gone through the girls' locker room. Concluding that he must have been lost or delivering flowers, their discussion ended. Bruggenthies returned to her office to wait for A.M.W., who was scheduled for a make-up swimming test, and Brama continued with his work.

At 1:00 p.m., A.M.W. reported to the girls' locker room and changed into her swimsuit for the test. After the test, A.M.W. returned to the locker room to shower and change into her clothes. As she started to get dressed, Little approached her, told her to be quiet, and stated that he would not hurt her. He then put a towel around her head and led her to a toilet stall, where he sexually assaulted her at knife point. After Little left the locker room, A.M.W. immediately reported that she had been raped.

■ The school district's statutory immunity claim is governed by Minn.Stat. § 466.03, subd. 6, which provides that a municipality is exempt from tort liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." We have said, "[i]n applying the discretionary function exception under Minn.Stat. § 466.03, subd. 6 * * *, this court has drawn a distinction between conduct at a planning level (protected) and conduct at an operational level (unprotected)." [7] The party claiming statutory immunity has the burden of proof.[8] When deciding

statutory immunity claims, we "focus[ ] on whether the legislature intended to immunize the particular government activity that is the subject of the tort action." [9] The underlying purpose of statutory immunity is to prevent the judicial branch of government from, "through the medium of tort actions, second-guess[ing] certain policy-making activities that are legislative or executive in nature." [10]

■ Courts have found resolution of statutory immunity claims difficult. In part, that is due to: (1) a failure to rigidly apply the test for determining entitlement to statutory immunity; (2) difficulty in separating negligence issues from immunity issues; (3) merging concepts associated with statutory immunity with those from the doctrine of official immunity; and (4) a desire to reach a specific outcome.[11] Resolution of this statutory immunity claim, however, is not difficult. In order for the school district to be immune from suit under section 466.03, subd. 6, the school district must meet its burden of establishing that the conduct challenged by A.M.W. was of a public policy-making nature involving social, political, or economical considerations.[12] It has failed to do so. While the district court found that there was a security policy in place governing the conduct of Camp, Bruggenthies, and Brama, the school district claims that no such security policy existed. The record supports that claim. What is not clear from the record is whether the school district consciously decided not to have a security policy or whether the school district simply never considered the issue. In either case, the result is the same; there was no security policy in place. Therefore, we conclude that the district court erred. The fact that the district court erred, however, does not necessarily mean that the school district is entitled to immunity under the statute. How can the school district be entitled to immunity under the statute when

**7.** *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 719 (Minn.1988).

**8.** *Id.* at 722 n. 6.

**9.** *Nusbaum,* 422 N.W.2d at 719 (citing *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

**10.** *Nusbaum,* 422 N.W.2d at 718.

**11.** *See generally* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 131 (5th ed.1984).

**12.** *See Nusbaum,* 422 N.W.2d at 722.

the conduct challenged could not have been of a public policy-making nature involving social, political, or economical considerations, there being no policy in place? The obvious answer is that the school district is not entitled to immunity under the statute.

■ The school district, relying on *Killen v. Independent School District 706*,[13] argues that because security policies, by their nature, require a balancing of policy objectives, the act of not putting a security policy in place is a decision entitled to statutory immunity. We are not swayed by that argument. While we recognize that public policy decisions, even bad or misguided ones, are entitled to immunity under the statute, we do not believe that the legislature intended to immunize government entities for their failure to put policies in place. The purpose of statutory immunity is to protect government entities from having the judiciary second-guess the important public policy decisions they are required to make. Were we to hold that the simple absence of a policy or a decision not to have a policy entitles government entities to immunity under the statute, we would be providing government decision-makers an incentive to avoid making the difficult decisions which the statute was designed to protect. Further, if no policy exists, it is impossible to define the outer limits of the immunity at issue, thus leading to blanket immunity. Immunity is the exception to the general rule of governmental liability.[14] Providing an incentive to avoid making difficult decisions, in combination with the attraction of obtaining blanket immunity, is inconsistent with that general rule. We hold that conduct flowing from a governmental entity's failure or refusal to enact a policy is conduct at an operational level and therefore is not entitled to statutory immunity

under Minn.Stat. § 466.03, subd. 6. To the extent that the court of appeals decision in *Killen* is inconsistent with our holding here, *Killen* is expressly overruled.

■ Next, we turn to the school district's claim that this lawsuit must be dismissed because the school district is entitled to vicarious official immunity based on Camp, Bruggenthies, and Brama's entitlement to official immunity. Under the official immunity doctrine, public officials, charged by law with duties calling for the exercise of judgment or discretion, are immune from suit for the exercise of that judgment or discretion unless they are guilty of a willful or malicious wrong.[15] Discretion has a broader meaning in the context of official immunity than in the context of statutory immunity; official immunity protects discretion exercised at the operational level rather than at the policy-making level.[16] The discretion exercised must be more than the performance of ministerial duties,[17] which we have defined as a duty which is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts."[18] If the public officials are immune from suit, then the question arises whether the employing governmental entity is also immune under the doctrine of vicarious official immunity. Even though no officials were sued here, it is still necessary to review the conduct of the public officials challenged in the complaint.[19]

■ Are Camp, Bruggenthies, and Brama entitled to official immunity? In answering that question, we must first determine whether the duty underlying the conduct giving rise to the cause of action applies to any of them.[20] This is so because the determina-

---

13. *Killen v. Independent Sch. Dist. 706*, 547 N.W.2d 113 (Minn.App.1996).

14. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982).

15. *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988).

16. *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991); *Elwood*, 423 N.W.2d at 678.

17. *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992).

18. *Johnson v. State*, 553 N.W.2d 40, 46 (Minn. 1996) (internal quotation marks omitted).

19. *See Pletan*, 494 N.W.2d at 42 (discussing review of an official's conduct in determining employer liability).

20. *See Watson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 415 (Minn.1996) ("in analyzing any immunity question it is essential to identify the precise governmental conduct at issue").

tion of whether the public official was exercising discretion at an operational level or was engaged in a ministerial act cannot be made without a review of the duty underlying the challenged conduct. The complaint here makes broad general allegations about the school district's duty to provide security, protection, and supervision to A.M.W. More specifically, A.M.W. asserts that the school district's security policy required Camp, Bruggenthies, and Brama to refer visitors to the principal's office. However, we have determined that the school district did not have a security policy. Thus, Camp, Bruggenthies, and Brama had no duty based on a security policy.

■■■ In the alternative, A.M.W. argues that if we conclude that Camp, Bruggenthies, and Brama did not have a duty under a school district security policy, they had a common-law duty to protect A.M.W. As authority for that position, A.M.W. relies on dicta from *Spanel v. Mounds View Sch. Dist. No. 621.*[21] We decline to rely on the dicta found in *Spanel,* standing alone, as establishing a common-law duty applicable to Camp, Bruggenthies, and Brama. We decline for two reasons: first, because it is only dicta; and second, because even if we were to assume that it carried the weight of law, it would not be helpful because it tells us nothing about the precise duty applicable to Camp, Bruggenthies, and Brama. While there may be some broad general duty on the part of the school district to protect children, when examining a public official's entitlement to official immunity, we must look to the precise duty giving rise to the cause of action. Without a clear showing of what that duty is, it is impossible to analyze whether the public official was engaged in the exercise of discretion at the operational level or whether he or she was performing a ministerial act. Therefore, we remand to the district court for a determination of: (1) whether there is a common-law duty in Minnesota for the protection of school children; and (2) if that duty exists, whether it

specifically relates to the conduct of Camp, Bruggenthies, and Brama.

Affirmed in part as modified, reversed in part, and remanded.

BLATZ, C.J., and GILBERT, J., took no part in the consideration or decision of this case.

---

**21.** 264 Minn. 279, 291, 118 N.W.2d 795, 802 (1962) ("School children have a special status in the eyes of the law, and in view of the compulso-

ry attendance statute deserve more than ordinary protection.").