**Jane DOE, Appellant,**

v.

**PARK CENTER HIGH SCHOOL, et al., Respondents.**

No. C2–98–1864.

Court of Appeals of Minnesota.

April 27, 1999.

Carla C. Kjellberg, St. Louis Park, for appellant.

Gregory W. Deckert, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondents.

Considered and decided by TOUSSAINT, Chief Judge, ANDERSON, Judge, and HOLTAN, * Judge.

## OPINION

### G. BARRY ANDERSON, Judge.

In this negligence action, the district court granted summary judgment to a school district on the basis of discretionary immunity. We affirm and grant respondent's motion to accept its notice of review.

## FACTS

Appellant Jane Doe brought this action against respondent Osseo School District No. 279, which operates Park Center High School (Park Center) in Brooklyn Park. This appeal grew out of a case that appellant initiated against both respondent and a former Park Center physical education instructor, Wendell Ring (Ring). Appellant sued Ring, alleging various intentional torts based on a sexual relationship between them while she was a pupil in one of his classes. Ring was dismissed from this suit after he reached a settlement with appellant. Appellant's origi-

nal claim against respondent asserted negligence, vicarious liability for Ring's conduct, and a violation of the Minnesota Human Rights Act under Minn.Stat. § 363 (1998).

Appellant claimed that she engaged in sexual activity with Ring on numerous occasions from December 1995 to April 1996. After two sexual engagements in late 1995, appellant and Ring met more frequently through early 1996. They met, on a few occasions, at appellant's home during school hours. Ring and appellant did not have sexual contact on school property except on one occasion: when, after school hours, the two met and kissed in a bathroom. This last contact occurred late in the evening, behind locked doors of a women's bathroom in the gymnasium; they were not interrupted and they left through different doors so as not to be discovered.

Appellant broke off the relationship with Ring in April 1996. On that same day, appellant reported her sexual contact with Ring. Respondent suspended Ring without pay pending investigation, and Ring later resigned.

Evidence was submitted to the district court alleging that respondent had notice that Ring had previously engaged in alleged sexual activity with other students. In December 1988, Dr. Judith Lamp, then principal of Park Center, received an anonymous phone call from a parent who explained that Ring was having a sexual relationship with a then-current student. The caller explained that her information came from her son, who had been told by his also unidentified girlfriend, who had been told by yet another unnamed person, that Ring was having an affair with a student.

In response, Dr. Lamp called the personnel director of the school district. Appellant notes that the principal did not contact counsel, the authorities, or the board of teaching. The principal explained by affidavit that she did consider policy issues with other school administrators in resolving the allegations against Ring. The administrators discussed the Data Practices Act and what level of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. Art. VI, § 10.

investigation to conduct considering the questionable multiple hearsay rumor as to Ring's involvement with a student.

The principal conducted an investigation and met with Ring to inform him of the accusation. The parties do not agree as to whether Ring named a student at this meeting. At the meeting, Ring denied engaging in any sexual activity with students but alleges that he told the principal that he was counseling a particular student as to parental problems. During the meeting with Ring, the principal warned him regarding the allegations and advised him on school procedures on meeting alone with female students.

In this proceeding, Ring admitted that he had engaged in a sexual relationship with the "counseled" student in 1988.

Appellant provided further hearsay testimony describing Ring's sexual contact with his students. Appellant relies on affidavits from former students that detail rumors over a period of years of Ring's contacts with female students. Ring also described relationships with a few students with all but two of the relationships not initiated until after the student had graduated from high school. These two relationships described by Ring were sexual in nature, and the girls were his students. The first was the student involved in the 1988 investigation. The second was appellant.

Appellant dismissed her claims under the Minnesota Human Rights Act. The district court then dismissed appellant's remaining claims on a motion for summary judgment on the grounds that respondent was statutorily immune from suit. The district court also rejected appellant's vicarious liability claim against the school district, not only on immunity grounds but also on substantive grounds. The district court denied respondent's motion for summary judgment on the negligent retention count but noted the claim was barred by application of discretionary immunity.

Appellant now challenges the district court's judgment granting respondent's motion for summary judgment on the ground of discretionary immunity. Appellant has not appealed the court's vicarious-liability holding. Respondent challenges the failure to dismiss the negligent-retention claim, in addition to introducing a defense of vicarious official immunity that is raised for the first time on appeal.

## ISSUE

Did the school district's response to allegations that a teacher was engaging in inappropriate sexual activity with students justify discretionary immunity from appellant's negligence claim?

## ANALYSIS

On appeal from summary judgment, a reviewing court must determine whether the district court erred in its application of the law and whether there are any genuine issues of material fact. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In so doing, a reviewing court views "the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

In 1963, the Minnesota legislature passed the Municipal Tort Liability Act. The Act imposes liability on every municipality for its torts. Minn.Stat. § 466.02 (1998). A school district, such as respondent, is defined as a "municipality" by the Act. Minn.Stat. § 466.01, subd. 1 (1998). But the Act also provides immunity from liability for discretionary acts, exempting "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1998).

■ The district court granted respondent's motion for summary judgment seeking discretionary immunity from appellant's claims. The validity of an immunity defense is a question of law, *Davis v. Hennepin County*, 559 N.W.2d 117, 120 (Minn.App. 1997) (citing *Elwood v. County of Rice*, 423 N.W.2d 671, 675 (Minn.1988)), *review denied* (Minn. May 20, 1997), which this court considers without deference to the decision of the district court. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

The core of appellant's challenge focuses on Dr. Lamp's investigation of the 1988 allegation against Ring. Whether a governmental action is a discretionary function is a question of law which we review de novo. *Nguyen v. Nguyen*, 565 N.W.2d 721, 722 (Minn.App.1997) (citation omitted). Such a determination requires a narrow interpretation of the discretionary function exception, *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988), which focuses on the purpose for the exception. *Id.* (citing *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713 (Minn.1988)).

This court has recognized that the purpose of such immunity is "to preserve the separation of powers by protecting executive and legislative policy decisions from judicial review through tort actions." *Killen v. Independent Sch. Dist. No. 706*, 547 N.W.2d 113, 116 (Minn.App.1996) (citing *Nusbaum*, 422 N.W.2d at 718), *review denied* (Minn. Aug 6, 1996), *overruled on other grounds, S.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19, 23 (1998). To further that end, "operational decisions" are distinguished from "planning decisions," with only the latter immune from tort actions. *See, e.g., In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d 543, 547 (Minn.App.1997), *review denied* (Minn. June 26, 1996). Planning-level actions require the evaluation of such factors as the financial, political, economic, and social effects of the decision. *See, e.g., Nguyen*, 565 N.W.2d at 723. In contrast, operational-level decisions are those actions involving ordinary, day-to-day operations of the government. The government entity bears the burden of establishing immunity. *Nusbaum*, 422 N.W.2d at 722.

The supreme court's recent decision, *S.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19 (Minn.1998), issued after the district court's ruling, provides guidance in the present case. In *S.W.*, the court denied immunity to a school district because the district failed to establish a policy to deal with school security issues.[1] In so doing, the court overruled *Killen*, 547 N.W.2d at 113, to the extent that the failure to develop a policy, by itself, regarding an issue which naturally demands the consideration of policy issues does not provide discretionary immunity. *S.W.*, 580 N.W.2d at 23. As a result, entities entitled to discretionary immunity are not allowed to avoid difficult decisions but must demonstrate policymaking at some level to claim discretionary immunity successfully.

*S.W.* does not stand for the proposition that a municipality without a policy is ineligible for immunity; rather, the court explained that the general nature of policymaking demands demonstration of "social, political, or economical considerations." *Id.* In *S.W.*, this demonstration was absent.

We conclude that this case fits within the parameters of *S.W.* because the school principal, Dr. Lamp, considered policy issues in responding to the allegations against Ring. The district court stated the policy issues as clearly as possible when it noted:

Dr. Lamp was faced with carefully weighing considerations involving the reliability or unreliability of the information received, the evidence of wrongdoing, the safety of students and faculty, the legal ramifications involved and the procedural aspects of the investigation itself. The decisions could ultimately have repercussions for the school, present and future teachers, students and Dr. Lamp as well. Further, the supervision and retention of Mr. Ring following the allegations are no less discretionary than the immediate investigation employed by Dr. Lamp. Both were made on the "planning level of conduct." The response and resulting decisions cannot reasonably be characterized as ministerial; they are based on a multitude of policy considerations which are precisely the type of discretionary actions subject to discretionary immunity.

We turn next to appellant's claim that because Dr. Lamp's response involved professional judgment, not policy, immunity does not apply. The supreme court recently contrasted social, political, and economic con-

---

1. There is no dispute that the school district in the present case had a sexual harassment policy; there was no written policy, however, that detailed for Dr. Lamp the specific procedures that governed the investigation at issue.

siderations with mere "professional or scientific judgments," the latter not qualifying for immunity. *Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn.1994) (citation omitted). A "professional" judgment by Dr. Lamp, for example, would include decision-making that impacts the normal day-to-day routine of a school. However, responding to allegations that a teacher has engaged in inappropriate sexual activity with a student is far from routine and is seemingly outside the scope of Dr. Lamp's "profession." In responding, Dr. Lamp had to consider such factors as the Data Practices Act and the threat of an exhaustive investigation on Ring's professional career versus the level of threat to the general student body. Such balancing is neither operational nor a part of Dr. Lamp's "professional" routine. Whether Dr. Lamp's analysis and investigation were flawed, particularly in light of the later sexual assault on appellant, is irrelevant; immunity protects respondent even for incorrect or imprudent discretionary decisions. *See* Minn.Stat. § 466.03, subd. 6.

Appellant contends that, because the investigation was flawed, immunity is not warranted. The distinction between "making" and "implementing" policy may be difficult but, because the implementation naturally has consequences, discretionary immunity "would afford little comfort if it did not extend to some of the consequences of the policy itself." *Pletan v. Gaines*, 494 N.W.2d 38, 44 (Minn.1992).

Appellant ignores our unwillingness to question policy. Our single concern is to consider whether a government entity has demonstrated the balancing and evaluation of policymaking factors and effects of a given plan. *See, e.g., Nguyen*, 565 N.W.2d at 723. Finally, as previously noted, the Act does not provide for "second guessing" decisions determined to be discretionary. Minn.Stat. § 466.03, subd. 6 (providing immunity "whether or not the discretion is abused").

Finally, we respond to respondent's arguments relating to vicarious official immunity and negligent retention. For the first time, on appeal, respondent argues that it is entitled to vicarious official immunity. This court will generally not consider matters not argued and considered in the court below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Because respondent failed to raise this defense at district court, we do not consider it now. Although we accept respondent's notice of review, it is unnecessary to consider its appeal of the district court's negligent-retention ruling because of our conclusion on the issue of discretionary immunity.

## DECISION

The district court did not err in granting summary judgment in favor of respondent based on discretionary immunity. The school district, through the actions of Dr. Lamp, engaged in policymaking and planning decisions in its investigation of Ring's 1988 actions and is thus immune from the liability claims in this case including the negligent-retention claim.

**Affirmed; motion granted.**